STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ROBERT B. LEAVITT, DEFENDANT-APPELLANT.

Argued May 5, 1987—Decided June 30, 1987.

*Charles P. Allen, Jr.*, argued the cause for appellant (*Dietrich, Allen & St. John*, attorneys).

*John M. Willis*, Assistant Prosecutor, argued the cause for respondent (*Paul T. Koenig, Jr.*, Mercer County Prosecutor, attorney).

*Boris Moczula*, Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*W. Cary Edwards*, Attorney General, attorney).

The opinion of the Court was delivered by

O'HERN, J.

We granted certification, 107 *N.J.* 28 (1986), limited solely to defendant's argument that giving *Miranda* [1] warnings and "implied consent" warnings to a suspected intoxicated driver is inherently confusing, thereby depriving the suspect of the effective assistance of counsel. The *Miranda* warnings basically state that a defendant has the right to remain silent and the right to consult with an attorney; the "implied consent" or "refusal" warnings, however, inform the suspect that the right to remain silent and right to consult with an attorney do not apply to the taking of breath tests and do not give a right to refuse to take the breath test. We find that this defendant was not confused and that he was not denied the effective assistance of counsel at any critical stage of the prosecution.

The case arises from an accident in a parking lot. The defendant had returned to the parking lot in order to push his

---

[1] *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

stalled vehicle to an area from which it could be towed. He got the car rolling and jumped in, but in the course of its passage through the parking lot the car collided with a car backing out of a parking space. This car's driver suspected defendant was under the influence of alcohol, and called the police. The police officer who arrived at the scene smelled alcohol on defendant's breath and conducted a field balance test. The officer arrested the defendant and took him to police headquarters. Defendant consented to breathalyzer testing, which resulted in two .16% blood-alcohol readings.[2]

The argument made in the municipal court was essentially a right-to-counsel argument phrased this way:

> [T]he problem is * * * that the Miranda Rights and the Refusal Rights are read to the defendant and they are in conflict. Although we can say it's illegal in the sense that Mr. Leavitt will be punished for a refusal to take the test, he does have the power in New Jersey to refuse to take the test. And * * * in that situation, he must have the advice of counsel.

The municipal court correctly recognized that "there is no constitutional sixth amendment right or constitutional due process right to Counsel for purposes of consultation prior to the administration of a breathalyzer test." It therefore ruled that the warning to the defendant that he had no right-to-counsel before deciding whether to consent to such a test is not a deprivation of the defendant's rights. Hence, the court denied the motion to suppress the results of the breathalyzer test. Defendant was convicted of driving while intoxicated in violation of *N.J.S.A.* 39:4–50.

On appeal to the Law Division, defendant renewed the argument concerning the inconsistent nature of the warnings, stating that the "contradictory advice given under the refusal form leads any person into confusion * * * [a]nd the law is in somewhat * * * of confusion now." The Law Division found,

---

[2]Defendant had been given *Miranda* warnings when originally arrested. He was given additional *Miranda* warnings at the station house, and then read the standard breathalyzer refusal or "implied consent" warnings before submitting to the breathalyzer test.

however, that the police officer did, in fact, properly inform the defendant of his rights under the implied consent law and recognized that although some states have decided that a defendant does have a right to assistance of counsel during the initial stages of the arrest, and prior to and during the breathalyzer test so long as that does not cause undue delay, it was not the law in New Jersey. The court also noted that "at no time * * * during the video taping did the defendant request that an attorney be provided to him after having been advised of his rights." It thus found no cause to suppress the breathalyzer test or dismiss the complaint on this issue.[3]

Defendant raised five issues on appeal: (1) that the inherent conflict between the *Miranda* warnings and the instructions prior to administration of the breath test created a violation of his constitutional rights and mandates dismissal; (2) that the practice of the local police of holding individuals suspected of driving while intoxicated (DWI) for several hours prevented him from obtaining independent scientific tests; (3) that the breath test results were not conclusive and were rebutted by the videotape evidence; (4) that the State had not carried its burden of proof; and (5) that defendant was not "operating" his vehicle within the meaning of the New Jersey statute. The Appellate Division, in an unreported decision, rejected each claim and affirmed the conviction. Here, we address only the first issue.

I.

A brief review of the pertinent regulatory framework is in order. The implied consent law, *N.J.S.A.* 39:4–50.2(a), provides:

---

[3]At the trial before the municipal court and the *de novo* appeal before the Law Division, each court rejected the arguments that defendant's pushing his auto and placing it in motion did not constitute operation of the vehicle and that his inability to obtain independent blood testing invalidated the test results against defendant. We do not address these two issues and focus only on the alleged confusion created by the warnings.

> Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S. 39:4-50.

*N.J.S.A.* 39:4-50.2(e), however, prohibits the use of physical force to compel the administration of the breath test. Therefore, the statute specifically states:

> The police officer shall * * * inform the person arrested of the consequences of refusing to submit to such test in accordance with [*N.J.S.A.* 39:4-50.4a] of this amendatory and supplementary act. A standard statement, prepared by the director, shall be read by the police officer to the person under arrest.

The consequences of refusing to submit "when requested to do so" are a fine of not less than $250 and a six month suspension of driving privileges, or if in connection with a subsequent offense under the section, a two year revocation. *N.J.S.A.* 39:4-50.4a.

Prior to the decision in *Berkemer v. McCarty,* 468 *U.S.* 420, 104 *S.Ct.* 3138, 82 *L.Ed.*2d 317 (1984), which held that the police authorities must give *Miranda* warnings to a person suspected of a motor vehicle offense before subjecting the suspect to custodial interrogation, the standard statement prepared by the Director of the Division of Motor Vehicles (Director) did not include *Miranda* warnings. In *State v. Macuk,* 57 *N.J.* 1, 15 (1970), the Court had held:

> There is no legal right or choice to refuse, despite the authorized additional penalty for refusal in the case of the breath test. So it is inappropriate to warn that a test need not be taken, although it is quite fair to advise of the consequences of refusal to take a breath test.

Since the decision in *Berkemer v. McCarty, supra,* 468 *U.S.* 420, 104 *S.Ct.* 3138, 82 *L.Ed.*2d 317, however, *Miranda* warnings have been given. These are customarily given prior to a recitation of the refusal warnings.

Some jurisdictions have held that when a motorist is confused by the two warnings concerning assistance of counsel—one warning (*Miranda*) according the assistance of counsel, the

other (breath test refusal) *not* according assistance of counsel—and then *refuses* to take the breath test in the mistaken belief that the refusal is privileged, the motorist should not suffer the consequences of confusion and not be penalized for the refusal. *See, e.g., Wethern v. Orr,* 271 *Cal.App.*2d 813, 76 *Cal.Rptr.* 807 (4th Dist.1969); *Calvert v. State Dep't. of Revenue, Motor Vehicle Div.,* 184 *Colo.* 214, 519 *P.*2d 341 (1974); *State v. Severino,* 56 *Haw.* 378, 537 *P.*2d 1187 (1975); *Swan v. Department of Pub. Safety,* 311 *So.*2d 498 (La.App.1975); *Muir v. Cox,* 611 *P.*2d 384 (Utah 1980). Other jurisdictions have held that the administration of the breath test constitutes a critical stage in a criminal prosecution entitling the accused to the assistance of counsel. *See, e.g., State v. Hill,* 277 *N.C.* 547, 178 *S.E.*2d 462 (1971); *State v. Fitzsimmons,* 93 *Wash.*2d 436, 610 *P.*2d 893, *vacated,* 449 *U.S.* 977, 101 *S.Ct.* 390, 66 *L.Ed.*2d 240, *aff'd on remand,* 94 *Wash.*2d 858, 620 *P.*2d 999 (1980). *See generally* Annotation, "Denial of Accused's Request for Initial Contact With Attorney—Drunk Driving Cases," 18 *A.L.R.* 4th 705 (1982) (discussing state and federal cases involving drunk driving offenses in which courts have discussed police denials of suspect's request for initial contact with an attorney); Annotation, "Request Before Submitting to Chemical Sobriety Test to Communicate With Counsel as Refusal to Take Test," 97 *A.L.R.*3d 852 (1980) (discussing federal and state cases in which courts have discussed request to consult attorney before submitting to chemical test as refusal to take test). In these states, it is irrelevant that the suspect is confused; the critical inquiry is whether the defendant was afforded the opportunity to obtain assistance of counsel before administration of the breath test.

## II.

Concededly, it is difficult to impart to a suspected inebriate in a station house the subtle legal distinctions that make it constitutionally permissible to extract a person's blood or breath but not his or her words. The distinction is not always that clear to

judges. See the several opinions in *Schmerber v. California*, 384 *U.S.* 757, 86 *S.Ct.* 1826, 16 *L.Ed.*2d 908 (1966). And superimposed upon the fifth-amendment distinctions between testimonial and nontestimonial compulsion is the sixth-amendment guarantee of the effective assistance of counsel at the critical stages of criminal proceedings.

To avoid confusion between fifth- and sixth-amendment guarantees, the terminology applicable to *Miranda* interrogation should not be used interchangeably with the sixth-amendment guarantee of the effective assistance of counsel. An example will suffice to illustrate the differences. A motorist apprehended on a speeding ticket and brought before a municipal court accurately could be told that he had no constitutional right to the assistance of counsel in the disposition of the traffic ticket. It would be incorrect to tell him that he had no right to consult an attorney on the charges. The concepts are obviously different.

By the same token, but for different reasons, a motorist requested to furnish a breath or blood sample is not guaranteed the sixth-amendment's assistance of counsel at that stage of the proceedings. *United States v. Wade*, 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967); *see State v. DeLorenzo*, 210 *N.J.Super.* 100 (App.Div.), *certif. denied*, 105 *N.J.* 507 (1986) (scientific analysis of blood sample not a critical stage). No provision of the New Jersey Constitution or statutes furnishes such a guarantee. *See State v. Green*, 209 *N.J.Super.* 347 (App.Div.1986) (*Miranda* inapplicable to breathalyzer test and field sobriety testing); *cf. State v. Stever*, 107 *N.J.* 543 (1987) (under *South Dakota v. Neville*, 459 *U.S.* 553, 103 *S.Ct.* 916, 74 *L.Ed.*2d 748 (1983), no *Miranda* warnings are required with respect to police request for blood-alcohol test; no independent state grounds exist to require contrary result). Hence, it is correct to advise the suspect that he has no right to refuse to give a breath sample on the ground that he has not been afforded counsel.

Whether a suspect should be permitted to call an attorney before the test is more a matter of timing and practicality than anything else. Our traditions presuppose access to counsel or family by persons in police custody. Many states provide for this by statute or court rule. *See* American Law Institute, *Model Code of Pre-Arraignment Procedure* (Tent. Draft 1966) app. V (citing, *Ala.Code* tit. 41, § 223 (1958); *Alaska Stat.* § 12.25.150 (1962); *Colo.Rev.Stat.Ann.* § 39–1–1 (1963); *Ill. Ann.Stat.* ch. 38, para. 103–3 (Smith-Hurd 1964); *Ky. Rule Crim.P.* 2.14; *Mass.Gen.Laws Ann.* ch. 276, § 33A (Supp.1964); *N.H.Rev.Stat.Ann.* § 594:16 (1955); *N.C.Gen.Stat.* § 15–47 (Supp.1963); *Tenn.Code Ann.* § 40–2004 (1955); *Wash.Rev. Code Ann.* § 9.33.020 (1961)). The American Law Institute, *Model Code of Pre-Arraignment Procedure, supra,* recommended that "[p]romptly after the warning [concerning how long the suspect may be held] the station officer shall afford the arrested person an opportunity, including if necessary funds in a reasonable amount, to use a telephone[,]" § 4.01(5); and that "[c]ounsel for an arrested person shall have prompt access to him, by telephone, and in person on counsel's arrival at any place where such person is detained." § 5.07.

The problem that police face in the drunk driving setting is that they must administer the necessary blood-alcohol test within a reasonable time after the arrest in order to get an accurate reading. "The evidence is evanescent and may disappear in a few hours." *State v. Dyal,* 97 *N.J.* 229, 239 (1984). Hence, the more accurate assessment of the situation is that because the police must administer the blood-alcohol test promptly, they are unable to afford suspects the opportunity to consult with counsel before they administer the test. We fear, however, that too many language refinements will only add to the confusion and not eliminate it. The Director has developed a suggested form that correctly states the reality of the situation, if not the legal reasoning that supports it. To be more accurate and perhaps less confusing, it would be better simply to advise the suspect that his right to consult with an attorney

before giving any oral or written statement does not give him the right to refuse to give (or to delay giving) the breath sample·when requested. Without intending to crystallize the concept in any particular set of words, it strikes us that a variant of paragraph four of the Director's standard form, which would convey the same meaning, would be:

> The warnings previously given to you concerning your right to remain silent and right to consult with an attorney do not apply to the taking of breath samples and do not give you the right to refuse to give (or to delay giving) samples of your breath for purposes of conducting breath tests. You have no legal right to have an attorney, physician, or anyone else present, for purposes of taking the breath samples. If you refuse to give the required breath samples, such a refusal will be used against you on a charge of refusing to submit to breath tests.

■ We recognize that despite the best of efforts some confusion may remain. Without resolving whether any defendant may validly assert the defense, we agree with the view expressed in the Attorney General's brief that the "exclusive, narrow exception to the general rule that refusals cannot be validly justified," would have to be premised on a record developed by a defendant to show that he had indeed been confused. We also agree that it is entirely appropriate that a defendant bear the burden of persuasion if he wishes to establish a confusion claim. We suspect that in most cases the defendant makes a more practical rather than legal judgment about exercising the statutory right to refuse a blood-alcohol test in light of the generally known consequences.

■ In this case it is clear that the "confusion doctrine" cannot be asserted by the defendant. Both trial courts benefited from review of the videotape of defendant's breath testing proceedings, together with all other exhibits and evidence, to sustain their conclusion that defendant had been apprised of the relevant legal principles and was not confused with respect to the exercise of his rights.

The judgment of conviction under *N.J.S.A.* 39:4–50 is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices
CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI
and STEIN—7.

*For reversal*—None.