928 A.2d 921 (2007)
395 N.J. Super. 337
STATE of New Jersey, Plaintiff-Respondent,
v.
Ernest SPELL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 2007.
Decided July 31, 2007.
*922 John Vincent Saykanic, Clifton, argued the cause for appellant (Mr. Saykanic, on the brief).
Jason F. Statuto, Assistant Passaic County Prosecutor, argued the cause for respondent (James F. Avigliano, Passaic County Prosecutor, attorney; Mr. Statuto, of counsel and on the brief).
Before Judges STERN, SABATINO and LYONS.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant appeals from a conviction on trial de novo at which he was found not guilty of careless driving and driving while intoxicated (DWI) but guilty of refusal to submit to a breathalyzer test in violation of N.J.S.A. 39:4-50.2.[1] He was sentenced to pay a fine of $1,000, together with costs and surcharges, and his license privileges were suspended for ten years. He was also ordered to complete an alcohol education program.
On this appeal defendant argues that his refusal conviction "must be reversed and a judgment of acquittal entered as the State did not prove each and every element beyond a reasonable doubt." In essence he asserts "there was a lack of probable cause for the arrest and/or a lack of proof [beyond a reasonable doubt] regarding the refusal."
On the morning of July 22, 2004, defendant crashed his automobile into the rear of another car which had stopped in the middle lane of the Garden State Parkway at about 3:00 a.m. Defendant's car came to rest about 500 feet beyond the other vehicle, which had been pushed to the side of the road.
The responding State trooper, John Salvato, "detected an odor" of alcohol on defendant and observed that defendant's face was "flushed" and his eyes were "bloodshot." Defendant admitted to having "a few beers." Salvato conducted "the horizontal gaze," "alphabet," "heel to toe," and "one-legged stand" field sobriety tests. According to Officer Salvato, defendant's speech was "slurred" and he "mumbled several letters and stopped" during the alphabet test. His performance on the "heel-to-toe" and "one-legged" stand tests were also unsatisfactory, and he "lost his balance."[2] Defendant was arrested for *923 DWI.[3]
Defendant testified that he awoke at about 6:00 a.m. the morning before the accident, worked a whole day until 5:00 p.m., and played softball for his employer after work where he consumed about a beer and one-half. Defendant further testified that, following the game, he joined his wife for dinner, had two more beers and went home to bed. He was awakened at approximately 2:30 a.m. by a telephone call and learned that the father of his "best friend" had died. He was driving to meet his friend when the accident occurred and claims that he collided into the other car because it was "stopped" in the road. Defendant also claims he performed the field tests flawlessly although "dazed" by the impact of the accident which also caused him several injuries. According to defendant "[t]he combination of the air bag and then [] going back into the vehicle [which was] filled with smoke" affected his eyes and lungs. As a result, defendant testified that he informed the trooper that he was having difficulty breathing.
Defendant's wife corroborated the facts surrounding the dinner, return home, call from the friend, and defendant's departure.
At the barracks, Trooper Salvato asked defendant to give a breath sample. The testimony varies with respect to defendant's response. Defendant contends that he agreed to give a sample but reiterated to Officer Salvato that he had chest pains and was having "a hard time breathing" after the accident.[4] The defendant testified that after being read the breathalyzer form, he said he "want[ed] to take [the test] but was having a really hard time breathing right now."
Trooper Salvato testified that defendant said "I refuse" to submit to a breathalyzer after the Motor Vehicle Commission statement was read to him and that no treatment was rendered to defendant by an EMT team that had been called to the barracks. According to Salvato, "approximately an hour" later he requested the breath test, but the trooper declined because defendant had already refused.
The municipal judge found defendant guilty of DWI, careless driving, and the refusal. The judge made the following findings with respect to the refusal charge:
Although the defendant complained of difficulty breathing, when given medical treatment the responding EMS personnel did not find it necessary or required to transport the defendant to a hospital or for  to get further medical treatment.
In addition, when asked as to whether he wished further medical treatment defendant refused further medical treatment and as a matter of fact he did not seek any medical treatment whatsoever regarding his alleged breathing injury.
Further, he did not complain of any breathing system  symptoms or difficulty breathing at the scene of the happening of the accident.
The Court finds the trooper's testimony that the defendant's response to the question as to whether he would take the Breathalyzer test was a flat out I refuse. The Court finds that the defendant conveniently later attempted to utilize an alleged medical condition as a way of avoiding having to submit to a Breathalyzer test. The Court absolutely does not believe that the trooper *924 refused to allow the defendant to have oxygen at the Bloomfield Barracks.
It has been held that anything short of an unqualified, unequivocable  unequivocal I should say, assent to take the Breathalyzer test constitutes a refusal. [State v. Pandoli, 109 N.J.Super. 1, 262 A.2d 41 (App.Div.1970).]
The Court in this matter finds that all three elements have been satisfied or have been proven by the State beyond a reasonable doubt.
In addition I should say  I skipped this paragraph  in addition the Court finds that the defendant's later attempt to agree to take the Breathalyzer test cannot rectify his prior refusal to take the test. A defendant cannot cure a refusal by changing his mind and later agreeing to take the test. State v. Corrado, [184 N.J.Super. 561 (App.Div. 1982).] See also State v. [Bernhardt, 245 N.J.Super. 210, 584 A.2d 854 (App. Div.), certif. denied, 126 N.J. 323, 598 A.2d 883 (1991).]
Accordingly, the Court finds that this  the refusal has been satisfied. The elements  all of the elements of the refusal offense have been satisfied beyond any reasonable doubt. The defendant is guilty of refusing to submit to a Breathalyzer test in violation of [N.J.S.A.] 39:4-50.2.
In finding defendant guilty of the refusal charge on trial de novo, the Law Division stated:
I think it's just as clear that Mr. Spell, who was able to perform the task of going to the other victim's car, going back to his car, this gentleman didn't have any problem until allegedly he claimed he had a problem when they wanted him to take a Breathalyzer test. Medical attention was given to him. As a matter of fact, the EMT's didn't find it necessary to give him any oxygen, even though he was asking for oxygen.
I find that he was given proper notice, that he did refuse after receiving proper notice. And that coming back an hour later and saying, well, now I'd like to take it, is meaningless to this Court. What would we start to do once a person refuses? Draw a line at an hour, an hour and 15 minutes? Well, then it could be, I'll come back tomorrow morning and take the test. And everyone knows that the test  the importance of the test is having a Breathalyzer test within a reasonable period of time after you've imbibed the alcohol. I don't think the law permits anyone, under the pertinent law, to refuse and then come back an hour later. And I do find him guilty of refusal. . . .
The Law Division judge found defendant not guilty of the DWI and careless driving charges, but convicted him of the refusal charge.
There is no dispute that Trooper Salvato read the "New Jersey Motor Vehicle Commission Standard Statement for Operators of Motor Vehicles" form[5] to defendant:
1. You have been arrested for operating a motor vehicle while under the influence of intoxicating liquor or drugs, or with a blood alcohol concentration at, or above, that permitted by law.
2. The law requires you to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood.
3. A record of the taking of the samples, including the date, time, and results, *925 will be made. Upon your request, a copy of that record will be made available to you.
4. Any warnings previously given to you concerning your right to remain silent, and your right to consult with an attorney, do not apply to the taking of breath samples, and do not give you the right to refuse to give, or to delay giving, samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. You have no legal right to have an attorney, physician, or anyone else present, for the purpose of taking the breath samples.
5. After you have provided samples of your breath for chemical testing, at your own expense, you have the right to have a person or physician of your own selection, take independent samples and conduct independent chemical tests of your breath, urine, or blood.
6. If you refuse to provide samples of your breath you will be issued a separate summons for this refusal.
7. Any response from you that is ambiguous or conditional, in any respect, to your giving consent to the taking of breath samples will be treated as a refusal to submit to breath testing.
8. According to law, if a court of law finds you guilty of refusing to submit to chemical tests of your breath, then your license to operate a motor vehicle will be revoked, by the court, for a period of no less than seven months, but no more than 20 years. The Court will also fine you a sum of no less than $300, and no more than $2,000 for your refusal conviction.
9. Any license suspension or revocation for a refusal conviction may be independent of any license suspension or revocation imposed for any related offense.
10. If you are convicted of refusing to submit to chemical tests of your breath, you will be referred, by the Court, to an Intoxicated Driver Resource Center, and you will be required to satisfy the requirements of that Center in the same manner as if you had been convicted of a violation of N.J.S.A. 39:4-50, or you will be subject to penalties for your failure to do so.
11. I repeat, you are required by law to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. Now, will you submit the samples of your breath?
There is also no dispute that the trooper did not read the additional paragraph which is supposed to be read "[i]f the person: remains silent; or states, or otherwise indicates, that he/she refuses to answer on the grounds that he/she has a right to remain silent, or wishes to consult with an attorney, physician or any other person; or if the response is ambiguous or conditional, in any respect whatsoever." The text of the additional statement is as follows:
I previously informed you that the warnings given to you concerning your right to remain silent and your right to consult with an attorney, do not apply to the taking of breath samples and do not give you a right to refuse to give, or to delay giving, samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. Your prior response, silence, or lack of response, is unacceptable. If you do not agree, unconditionally, to provide breath samples now, then you will be issued a separate summons charging you with refusing to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood.

*926 Once again, I ask you, will you submit to giving samples of your breath?
The Legislature has required that police officers read to all defendants arrested for DWI a standard statement, prepared by the Director of the Division of Motor Vehicles, before endeavoring to administer a breathalyzer test. N.J.S.A. 39:4-50.2(e); State v. Widmaier, 157 N.J. 475, 489, 724 A.2d 241 (1999). "By doing so, the Legislature has provided a procedural safeguard to help ensure that defendants understand the mandatory nature of the breathalyzer test, their limited rights to counsel for purposes of the test, and the need for unequivocal, affirmative consent." Id. at 489, 724 A.2d 241. The statute requires that the police officer "inform the person arrested of the consequences of refusing to submit to such a test" and to read the "standard statement" as promulgated. N.J.S.A. 39:4-50.2(e). This is because "`anything substantially short of an unconditional, unequivocal assent to an officer's request'" "would undermine law enforcement's ability to remove intoxicated drivers from the roadways" and impede their ability to conduct the test in a timely manner to ensure that the results are meaningful. Widmaier, supra, 157 N.J. at 497, 724 A.2d 241.[6]
In Widmaier, Officer Walker, the arresting officer, after reading the defendant his Miranda rights, read the standard statement to defendant. Ibid. The defendant then asked "to call" his attorney, which led Officer Walker to read the additional paragraph. Id. at 497, 724 A.2d 241. According to Justice Stein:
By doing so, Walker again informed defendant that he had no right to consult with an attorney before giving breath samples, that he had no right to refuse to take a breathalyzer test, and that he would be charged with refusing to submit to taking samples if he told the officer that he would not submit breath samples because he first wished to consult with an attorney. Defendant failed to heed the officer's warning. Instead, he responded by saying, "I agree to the samples of my breath, but I would like my attorney present for calibration purposes."
[Ibid.]
The Court considered this "response to be conditional, not rising to the level of unequivocal consent needed to proceed with a breathalyzer test." Ibid. While the Court *927 held that the principle of double jeopardy precluded a conviction in the particular case, due to defendant's acquittal of the refusal charge in municipal court, id. at 501, 724 A.2d 241, the Court recommended amendments to the standard statement and inclusion of an additional paragraph to provide clarity with respect to the need to take the test following a DWI arrest:
We emphasize that a defendant's subjective intent is irrelevant in determining whether the defendant's responses to the officer constitute a refusal to take the test. A suspect's conditional or ambiguous response to a police officer's final demand to submit to the breathalyzer test constitutes a violation of the refusal statute whether or not the suspect intended to refuse to take the test. We also note that a motorist has no right to delay a breathalyzer test . . .
Although we are fully persuaded that defendant failed to consent to the breathalyzer test, we note that it may be in the interest of both law enforcement officials and the driving public to amend the standard statement in order to eliminate any ambiguity concerning a motorist's intent to submit to the test. We would recommend a modification of the instructions accompanying the statement that directs the police officer, in the event the motorist's response to the standard statement is conditional in any respect whatsoever, to then inform the motorist that the prior response is unacceptable and that, unless the motorist consents unconditionally to the taking of breath samples, a summons alleging violation of the breathalyzer statute will issue. Accordingly, we urge the Director of the Division of Motor Vehicles to consider revising the standard statement to further ensure that suspects understand that an ambiguous or conditional answer to a request to submit to a breathalyzer test will be deemed a refusal.
In addition, we note that the second sentence of the supplement to the standard statement that, in its present form, lists three examples of conduct by a subject that will result in issuance of a summons, supra, at 484-85, 724 A.2d 241, may be difficult to understand. A simpler version would warn the suspect that if he or she does not agree to provide breath samples, a summons will issue. We encourage the Director to simplify and clarify the supplement to the standard statement.
[Id. at 498-99, 724 A.2d 241.]
The form read in this case was modified and revised effective April 26, 2004.[7]
State v. Duffy, 348 N.J.Super. 609, 792 A.2d 555 (App.Div.2002), appears to be the most recent published opinion dealing with an officer's obligation to read the standard statement as well as the additional paragraph. In Duffy, after reading the defendant the standard statement, the defendant claimed to be "sick" and unable to take the breathalyzer test. The officer then asked the defendant two more times if he would take the test, and defendant ultimately responded that he would take the test "but it's under duress." Id. at 610-11, 792 A.2d 555. The officer "then escorted defendant back to the holding cell and made no further attempt to give him the breathalyzer test." Id. at 611, 792 A.2d 555.
On Duffy's appeal from the refusal conviction, we noted that "[u]nlike in Widmaier, defendant was not informed that his response was unacceptable, and that unless he responded `yes,' a summons alleging *928 violation of the breathalyzer statute would issue." Id. at 612-13, 792 A.2d 555. Speaking through Judge (now Justice) Wallace, we held that "the failure to inform defendant that his response was considered a refusal, and that unless he replied yes he would be cited for a refusal, [was] a fatal defect in the State's case." Id. at 613, 792 A.2d 555.
The case before us differs from Widmaier and Duffy in that defendant was found to have unequivocally refused to take the breathalyzer test. The record supports such a finding, and we affirm the conviction. State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234 (1999). However, we add the following.
A reading of the standard statement used in this case does not require the officer to read the second paragraph when the defendant unequivocally refuses to take the breathalyzer test. As noted above, the instructions regarding the reading of the second paragraph are as follows:
IF THE PERSON: REMAINS SILENT; OR STATES, OR OTHERWISE INDICATES, THAT HE/SHE REFUSES TO ANSWER ON THE GROUNDS THAT HE/SHE HAS A RIGHT TO REMAIN SILENT, OR WISHES TO CONSULT AN ATTORNEY, PHYSICIAN, OR ANY OTHER PERSON; OR IF THE RESPONSE IS AMBIGUOUS OR CONDITIONAL, IN ANY RESPECT WHATSOEVER, THEN THE POLICE OFFICER SHALL READ THE FOLLOWING ADDITIONAL STATEMENT:
These instructions regarding the reading of the additional paragraph seem to be clearly designed for the defendant who ambiguously declines or conditionally agrees to take the breathalyzer test. According to Officer Salvato, defendant did not claim to have the right to remain silent, express any desire to see a physician or consult with counsel, or make any other request incident to taking the breathalyzer test. Rather, Trooper Salvato testified that defendant refused to take the test, and by reading the instructions to defendant as detailed in the Standard Statement without the additional paragraph, Trooper Salvato satisfied the procedural requirements of N.J.S.A. 39:4-50.2(e). Indeed, the final statement read to defendant was "I repeat, you are required by law to submit to the taking of samples of your breath." The additional paragraph was not necessary, as defendant was made aware twice that he was required to submit to a breathalyzer test and was informed of the penalties for failing to unconditionally submit to taking the test.
By directing that officers read the additional paragraph when the answer "is ambiguous or conditional, in any respect whatsoever," the instructions essentially mandate that the police officer read the additional paragraph whenever the defendant's response is anything other than "yes, I consent" or "no, I refuse." However, the potential exists that a defendant may unequivocally refuse to submit to a breathalyzer test and later argue that his response was ambiguous. Requiring police officers to read the additional paragraph whenever a defendant does not unconditionally agree to the test will avoid litigation about the nature of the response and whether it was "equivocal." It will also provide police officers with a clear obligation to read the additional paragraph. Accordingly, we think it prudent to hold that, effective on October 1, 2007, officers must read the additional paragraph of the form whenever the defendant refuses to immediately take the breathalyzer exam upon request.
By making our holding prospective, we avoid the problems of application to *929 DWI arrests before that date and provide adequate notice of the requirement. See, e.g., Cummings, supra, 184 N.J. at 96-100, 875 A.2d 906; State v. Knight, 145 N.J. 233, 249-53, 678 A.2d 642 (1996). We recognize that using a future date presents a deviation from normal rules of prospectivity. However, we believe that fair notice to the law enforcement community is appropriate, particularly because our decision is not compelled by constitutional law.[8]
Affirmed.
NOTES
[1] The judge in the municipal court made the findings by proof beyond a reasonable doubt. See State v. Cummings, 184 N.J. 84, 95-96, 875 A.2d 906 (2005). While the judge in the Law Division did not refer to the evidentiary burden in his decision, there is no contention he did not use that burden, particularly because it was noted during the argument of counsel.
[2] The municipal court judge referred to the video taken after the stop, but other than noting that "the defendant does appear to have slurred speech" and pointing out one comment defendant made about a friend who is a chief of police, did not appear to find the video to be of significance. We have viewed the video, which seems to be taken from a trooper car parked in the middle lane of the Parkway behind another police vehicle in front of the crash site. Defendant and Trooper Salvato are on the side of the road and not pictured. Some conversation is heard, but we do not find the video to be of any significance. In any event, the trooper's testimony established enough probable cause for the DWI arrest, irrespective of the strength of the DWI case.
[3] After receiving Miranda warnings, defendant told Salvato he had four beers between 8:00 and 11:00 p.m. the night before.
[4] EMTs were called to assist defendant at the barracks.
[5] The statement was first required by L. 1977, c. 29, replaced by L. 1981, c. 512 §§ 1-3. See N.J.S.A. 39:4-50.2(e) and 39:4-50.4a.
[6] The reason for the statement and need for immediate examination was explained by Widmaier:

Breath samples are a nontestimonial form of evidence. State v. Macuk, 57 N.J. 1, 14, 268 A.2d 1 (1970). Accordingly, a defendant does not have a Fifth Amendment right to consult with an attorney before taking the test, nor does a defendant have a right to have an attorney present when the test is performed. State v. Leavitt, 107 N.J. 534, 536, 540, 527 A.2d 403 (1987); see also Macuk, supra, 57 N.J. at 16, 268 A.2d 1 (holding that police officers are not required to give defendants Miranda warnings prior to administration of [a B]reathalyzer test because "fundamental reason for the Miranda rules is just not present"). Additionally, because breath sample evidence "is evanescent and may disappear in a few hours," State v. Dyal, 97 N.J. 229, 239, 478 A.2d 390 (1984), police must administer the [B]reathalyzer test within a reasonable time after the arrest in order to obtain an accurate reading. Leavitt, supra, 107 N.J. at 541, 527 A.2d 403; see also, State v. Pandoli, 109 N.J.Super. 1, 4, 262 A.2d 41 (App. Div.1970) (noting "rapidity with which the passage of time and physiological processes tend to eliminate evidence of ingested alcohol in the system"); State v. Corrado, 184 N.J.Super. 561, 568, 446 A.2d 1229 (App. Div.1982) (holding one-hour delay in consenting to take [a B]reathalyzer test violated Implied Consent Law).
[Widmaier, supra, 157 N.J. at 487-88, 724 A.2d 241.]
[7] It is the form still being utilized. See Office of the Attorney Gen., Div. of Criminal Justice, Attorney Gen. Guidelines, DWI Enforcement, http://www.nj.gov/oag/dcj/agguide.htm.
[8] We also recognize that we have no supervisory authority over courts and no rulemaking power. See, e.g., State v. Daniels, 182 N.J. 80, 96, 861 A.2d 808 (2004); State v. D.R., 109 N.J. 348, 371-77, 537 A.2d 667 (1988). However, we deem our decision to flow from the experience observed under the evolving case law including the rationale of Cummings, supra.