998 A.2d 517

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JOSEPH FEDERICO, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 9, 2009—Decided July 12, 2010.

Before Judges STERN, GRAVES [1] and SABATINO.

*Evan M. Levow,* argued the cause for appellant (*Levow & Associates, P.A.,* attorneys; *Mr. Levow,* of counsel and on the brief; *Sandra L. Battista,* on the brief).

*Christopher W. Hsieh,* Senior Assistant Prosecutor, argued the cause for respondent (*Camelia M. Valdes,* Passaic County Prosecutor, attorney; *Mr. Hsieh,* of counsel and on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

Defendant appeals from a judgment on trial de novo finding him guilty of driving while intoxicated (DWI), *N.J.S.A.* 39:4–50, refusal to take a breathalyzer, *N.J.S.A.* 39:4–50.2, and driving while suspended, *N.J.S.A.* 39:3–40. As a third DWI offender defendant was sentenced in the Clifton Municipal Court to a custodial sentence of 180 days, a ten-year suspension of his license, a $1000 fine, and other miscellaneous costs and fines. The municipal judge indicated he would consider an application to transfer defendant to an inpatient rehabilitation program after service of 90 days in custody.[2] On the refusal charge defendant received a concurrent ten year loss of license. For driving while on a suspended license, defendant received a separate $1000 fine, $33 in costs, a consecutive two year suspension of his driver's license and a consecutive 45 day jail sentence. The aggregate sentence was "12 year[s] loss of license and ... 225 days [in] jail." The municipal judge subsequently made the ten-year suspensions consecutive to each other because he felt it was required as a matter of law. *See N.J.S.A.* 39:4–50.4a(a).

---

[1] Judge Graves did not participate in oral argument, but with the consent of both parties participated in the disposition of the appeal.

[2] Defendant's sentence was stayed pending appeal to the Law Division.

The Law Division found defendant guilty of the three offenses on trial de novo and imposed the same penalties.[3] Defendant argues that the State failed to prove the DWI by proof beyond a reasonable doubt based only on the field sobriety tests and observations by police officers. Defendant also asserts "there is no evidence that [he] consumed any alcohol" on the night of November 2 and early morning of November 3, 2006 and specifically that "*N.J.S.A.* 39:4–50 does not apply to the facts of this case" because he "did not operate a motor vehicle under the influence of intoxicating liquor, narcotic, hallucinogenic or habit producing drug[s]" and was to the contrary exposed to work related occupational chemicals causing "a neurotoxic state." He further argues that the DWI conviction was against the weight of the evidence, "the refusal charge should have been dismissed based on the confusion doctrine because appellant lacked the capacity to make a knowing and reasoned response to the implied consent form," and "the trial court erred in convicting appellant of violating *N.J.S.A.* 39:3–40 because he did not knowingly operate a motor vehicle."

Defendant was found sleeping or passed out in his car with the engine running in Clifton at 1:53 in the morning of November 3, 2006. Upon being awakened defendant told Officer Joshua Eckert that he had two or three drinks at a party in Sparta. He was a short distance from his office, however, and developed at trial that he had been in his office at 12:52 a.m., when office records showed he turned off an oven. Defendant's theory is that he did not have enough time to have driven to Sparta and back in such a short period, so his report of drinking at a party in Sparta was inaccurate. Defendant and other workers testified that he had been working very late on the night of November 2, 2006, at his non-

---

[3] The Law Division opinion notes that the two ten-year suspensions were made concurrent, apparently unaware of the municipal judge's revision of the sentence. No issue is raised before us on that subject, but the matter should be reconsidered on the remand which we hereinafter order.

ventilated or inadequately ventilated office, and was exposed to toxic chemicals causing neurotoxicity.

Officer Eckert testified that defendants "speech was extremely slurred" and he had a "moderate smell of [a] possible alcoholic beverage." Because of poor performance on field sobriety test Eckert concluded "[t]hat the defendant was in fact under the influence of alcoholic beverages," and "obviously impaired."

Similarly, at police headquarters Officer Resa "detected an odor of alcoholic beverage on [defendant's] breath" and noted "his speech was slurred." Defendant explained he took prescription medicine and denied drinking. However, he declined to take a breathalyzer test when requested to so by Eckert, who read him the implied consent form. Defendant began "dry heaving" and "spitting into a garbage can." He then inquired if Resa "kn[e]w what [he] did for this town," referring to Clifton.

Defendant presented two doctors, Dr. Lawson Bernstein and Dr. Frank Baim, as witnesses. Bernstein explained the impact of the environmental condition of defendant's office and the chemical exposure that resulted in neurotoxicity for hours after his exposure to the chemical compounds. The condition includes inability to recollect short term memory and lack of orientation. Defendant could therefore neither remember nor have "the cognitive capacity to make a knowing and reasoned response to the questions that he was asked." Thus, according to defendant, in addition to not being guilty of DWI, or knowingly "operating" his vehicle, he could not make an "informed decision" to refuse to take the breathalyzer. However, Dr. Bernstein did not know defendant's actual exposure to substances on the night in question.

Dr. Baim, defendant's personal physician, attributed defendant's condition to the use of the medication Paxil, which was prescribed for anxiety.

We affirm the convictions substantially for the reasons expressed by Judge Donald Volkert in his written opinion of September 16, 2008. DWI is an absolute liability offense, *State v.*

*Hammond,* 118 *N.J.* 306, 313–18, 571 *A.*2d 942 (1990), and intoxication on chemicals or otherwise is not a defense. Much as involuntary alcohol intoxication is not a defense to a DWI charge, *id.* at 317–19, 571 *A.*2d 942, involuntary intoxication by chemicals cannot be. To hold otherwise would contravene the "clear legislative intent and a strong legislative policy to discourage long trials complicated by pretextual defenses." *N.J.S.A.* 39:4–50 prohibits operating a motor vehicle "while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit forming drug," which, by definition, "includes an inhalant or other substance containing a chemical *capable* of releasing any toxic vapors or fumes for the purpose of inducing a condition of intoxication." *N.J.S.A.* 39:4–50(a)(3) (emphasis added). But even if involuntary chemical intoxication were a defense for DWI, the trial judge did not have to accept defendant's version of events. Credibility is for the trial judge to decide, and the judge need not state reasons for the credibility determination or provide detailed, as opposed to general, findings. *State v. Locurto,* 157 *N.J.* 463, 470–74, 724 *A.*2d 234 (1999). Moreover, if it were possible that the defendant's disoriented state flowed from his use of Paxil, exposure to chemical compounds and sleep deprivation, the judge could accept the observations of the police regarding defendant's disheveled appearance, slurred language, watery eyes, and smell of alcohol, and make credibility determinations to conclude defendant was operating the vehicle while intoxicated from drinking alcohol.

As already noted, Officer Eckert testified that when he woke defendant he was "under the influence of alcoholic beverage" and "obviously impaired." Similarly, Resa, who observed defendant for twenty minutes at police headquarters, "detected an odor of alcoholic beverage on [defendant's] breath" and "his speech was slurred." They both felt a breathalyzer exam was necessary to confirm their observations.

We must also reject defendant's attack upon the refusal conviction. There was evidence which supported the conclusion

that defendant understood what the officers were saying to him. The trial judge found that defendant's explanations of what he did "for this town" were an "attempt to gain favor with the police officers" and his insistence that his condition was not caused by drinking reveals he understood his circumstances.[4] *See State v. Spell*, 395 *N.J.Super.* 337, 340, 928 *A.*2d 921 (App.Div.2007), *aff'd, o.b. in part and vacated in part*, 196 *N.J.* 537, 538–39, 959 *A.*2d 1209 (2008); *State v. Stever*, 107 *N.J.* 543, 559, 527 *A.*2d 408, *cert. denied*, 484 *U.S.* 954, 108 *S.Ct.* 348, 98 *L.Ed.*2d 373 (1987); *State v. Leavitt*, 107 *N.J.* 534, 542, 527 *A.*2d 403 (1987).

In his reply brief defendant argues that his "sentence to a jail term exceeding 180 days without a jury trial is improper."[5] *State v. Hamm*, 121 *N.J.* 109, 111–12, 577 *A.*2d 1259 (1990), *cert. denied*, 499 *U.S.* 947, 111 *S.Ct.* 1413, 113 *L.Ed.*2d 466 (1991), holds that there is no right to a jury trial on a third DWI offense resulting in a conviction and sentence of 180 days, notwithstanding the ten-year suspension of a driver's license and a $1000 fine. *See also State v. Stanton*, 176 *N.J.* 75, 87, 820 *A.*2d 637, *cert. denied*, 540 *U.S.* 903, 124 *S.Ct.* 259, 157 *L.Ed.*2d 187 (2003) (no right to jury trial for DWI). Only the New Jersey Supreme Court can change that rule.

The United States Supreme Court has held that a defendant facing multiple petty offenses with maximum sentences of

---

[4] Judge Volkert made his findings by proof beyond a reasonable doubt. *See State v. Cummings*, 184 *N.J.* 84, 96, 875 *A.*2d 906 (2005).

[5] In his plenary brief defendant argued that his 45 day consecutive sentence is "excessive under the circumstances presented." He asserted that he should have received "the mandatory minimum jail sentence of 10 days" "concurrent or consecutive to the jail term on the DWI charge." *See N.J.S.A.* 39:3–40(c). He presented no jury trial issue and it is inappropriate to raise this issue in a reply brief. However, given the importance of the issue we consider it in the absence of objection by the State and because the issue certainly relates to whether the sentence is excessive and involves a question of sentence legality which can be raised in a petition for post conviction relief.

180 days or less in a consolidated proceeding is not entitled to a jury trial. *Lewis v. United States,* 518 *U.S.* 322, 328, 116 *S.Ct.* 2163, 2167, 135 *L.Ed.*2d 590, 596–97 (1996). According to the Court, "[t]he Sixth Amendment's guarantee of the right to a jury trial does not extend to petty offenses, and its scope does not change where a defendant faces a potential aggregate prison term in excess of six months for petty offenses charged." 518 *U.S.* at 323–24, 116 *S.Ct.* at 2165, 135 *L.Ed.*2d at 594. Under that principle the sentences before us do not violate the federal constitution in the absence of a jury trial. Yet, prior to *Lewis,* our Supreme Court has held that "apart from possible constitutional compulsion, it would accord with the realities of the situation to say that trial by jury is relevant when, as here, the several petty offenses are factually related and arise out of a single event." *State v. Owens,* 54 *N.J.* 153, 162–63, 254 *A.*2d 97 (1969), *cert. denied,* 396 *U.S.* 1021, 90 *S.Ct.* 593, 24 *L.Ed.*2d 514 (1970). "[T]he sentences may not total more than the maximum authorized for a petty offense if a jury trial is not offered." *Id.* at 163, 254 *A.*2d 97. *See also Hamm, supra,* 121 *N.J.* at 112, 577 *A.*2d 1259; *State v. Ernst,* 230 *N.J.Super.* 238, 244, 553 *A.*2d 356 (App.Div.), *certif. denied,* 117 *N.J.* 40, 563 *A.*2d 811 (1989).

In *Lewis,* a five justice majority held that "no jury trial exists where a defendant is prosecuted for multiple petty offenses" of six months or less. 518 *U.S.* at 323, 116 *S.Ct.* 2163, 2165, 135 *L.Ed.*2d at 594. Justice Kennedy, speaking for himself and Justice Breyer, concurred, and stated the defendant may be tried without a jury for multiple petty offenses with maxima of six months or less where the trial judge indicates he or she will not impose an aggregate sentence over six months. *Id.* at 338, 116 *S.Ct.* at 2172, 135 *L.Ed.*2d at 603. It appears that, under *Lewis,* the federal constitution would permit the sentence imposed in this case, and we have examined such questions "primarily as one of federal-constitutional right," *Hamm, supra,* 121 *N.J.* at 112, 577 *A.*2d 1259. However, there are policy and historical reasons to

limit the jurisdictional maxima of municipal courts, including the amount of incarceration one should face without the right to jury trial. *See State v. Hamm, supra; State v. Ferretti,* 189 *N.J.Super.* 578, 461 *A.*2d 193 (Law Div.), *certif. denied,* 94 *N.J.* 606, 468 *A.*2d 238 (1983). In any event, given *Owens* the law in New Jersey appears to remain as stated in *State v. Linnehan,* 197 *N.J.Super.* 41, 43, 484 *A.*2d 34 (App.Div.1984), *certif. denied,* 99 *N.J.* 236, 491 *A.*2d 723 (1985):

> Persons charged with crime are constitutionally entitled to trial by jury. Those charged with petty offenses are not. *Duncan v. Louisiana,* 391 *U.S.* 145, 88 *S.Ct.* 1444, 20 *L.Ed.*2d 491 (1968). The New Jersey Supreme Court has held that the only reliable test for distinction is the severity of the authorized punishment, and that jury trial is not required unless the maximum penalty to which the defendant is exposed exceeds six months incarceration and a fine of $1,000. *State v. Owens,* 54 *N.J.* 153, 254 *A.*2d 97 (1969); *In re Yengo,* 84 *N.J.* 111, 417 *A.*2d 533 (1980). *See Baldwin v. New York,* 399 *U.S.* 66, 90 *S.Ct.* 1886, 26 *L.Ed.*2d 437 (1970). Where factually related petty offenses are tried together whose maximum sentences total more than six months, and the defendant is not offered a jury trial, the sentences may not total more than six months. *State v. Owens, supra.* Concurrent jail sentences, each of which does not exceed six months, are permissible. *Id.* 54 *N.J.* at 163, 254 *A.*2d 97.

Accordingly, in these circumstances, the jail sentences must run concurrently. *Owens, supra,* at 163, 254 *A.*2d 97.

The judgment of conviction is affirmed. The matter is remanded for reconsideration of sentence in light of the principles to which we have adverted.