**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0421-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ELENA WAGNER-BALL,

    Defendant-Appellant.

_____

Argued October 4, 2021 – Decided October 29, 2021

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 19-012.

Gerald D. Miller argued the cause for appellant (Miller, Meyerson & Corbo, attorneys; Elena Wagner-Ball on the pro se brief).

Jessica L. Marshall, Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Morris County Prosecutor, attorney; Jessica L. Marshall, on the brief).

PER CURIAM

Following a trial de novo in the Law Division, defendant Elena Wagner-Ball was convicted of driving while intoxicated (DWI), N.J.S.A. 39:4-50, based upon observation and not the results of her Alcotest that were deemed inadmissible. Defendant appeals, contending in her pro se merits brief:

POINT I

THE TRIAL COURT ERRED IN UNDERMINING CRITICAL EVIDENCE RULE 402, SEE ALSO [RULE] 403. SUPPRESSION OF EXCULPATORY EVIDENCE VIOLATES THE DUE PROCESS [CLAUSE] REGARDLESS OF WHETHER THE PROSECUTOR ACTED IN BAD FAITH. (STATE V[.] KNIGHT, 145 N.J. [233,] 245 [(1996)])[.]

POINT II

WITHHOLDING CRITICAL EVIDENCE PREVENTED THE DEFENSE FROM ESTABLISHING THE ASSERTION THAT THE DEFENDANT WAS NOT INTOXICATED BUT HAD ONE SHOT (30ML) OF ALCOHOL AND IS SUFFERING FROM MEDICAL ISSUES. DEFENDANT CONCLUDES THE REVIEW OF THE TRIAL RECORD CLEARLY ESTABLISHES THAT OBJECTIVE EVIDENCE CREATES A REASONABLE DOUBT THAT REQUIRES REVERSAL OF THE CONVICTION. (STATE V[.] VILORIO RAMIREZ, DOCKET NO. A-396217 T1, 2017)[.]

After reviewing the record considering the contentions advanced on appeal and applicable law, we affirm.

A-0421-19

Under N.J.S.A. 39:4-50, "[a] person who operates a motor vehicle while under the influence of intoxicating liquor . . . or operates a motor vehicle with a blood alcohol concentration [(BAC)] of 0.08% or more by weight of alcohol in the defendant's blood" is guilty of DWI. A per se violation of DWI can be established by the admissibility of Alcotest results showing a BAC at or exceeding the statutory limits. State v. Chun, 194 N.J. 54, 66 (2008). Intoxication, however, may be also be proven by evidence of a defendant's physical condition. State v. Kashi, 360 N.J. Super. 538, 545 (App. Div. 2003). The State need not prove "that the accused be absolutely 'drunk' in the sense of being sodden with alcohol. It is sufficient if the presumed offender has imbibed to the extent that his [or her] physical coordination or mental faculties are deleteriously affected." State v. Nemesh, 228 N.J. Super. 597, 608 (App. Div. 1988) (quoting State v. Emery, 27 N.J. 348, 355 (1958)).

Recognizing that "sobriety and intoxication are matters of common observation and knowledge, New Jersey has permitted the use of lay opinion testimony to establish alcohol intoxication." State v. Bealor, 187 N.J. 574, 585 (2006). Accordingly, it is well established that a police officer's subjective observation of an intoxicated defendant is sufficient ground to sustain a DWI conviction. A DWI conviction can be proven based on a finding that slurred

speech, disheveled appearance, bloodshot eyes, alcoholic odor on the breath, and abrasive demeanor were evidence of the defendant's intoxication. State v. Morris, 262 N.J. Super. 413, 421 (App. Div. 1993); see also State v. Cryan, 363 N.J. Super. 442, 455-56 (App. Div. 2003) (sustaining DWI conviction based on an officer's observations of defendant's bloodshot eyes, hostility, and strong odor of alcohol); State v. Cleverley, 348 N.J. Super. 455, 465 (App. Div. 2002) (sustaining DWI conviction based on officer's observation of the defendant's driving without headlights, inability to perform field sobriety tests, combativeness, swaying, and detection of odor of alcohol on the defendant's breath); State v. Oliveri, 336 N.J. Super. 244, 251-52 (App. Div. 2001) (sustaining DWI conviction based on officer's observations of watery eyes, slurred and slow speech, staggering, inability to perform field sobriety tests, and defendant's admission to drinking alcohol earlier in the day).

Defendant argues she provided Jefferson Township Police Officer John Ondish with two valid Alcotest breath samples showing a BAC under the intoxication standard of 0.08%, but her due process rights were violated when the municipal court judge—followed by the Law Division judge—improperly suppressed this evidence at trial. Defendant argues the Alcotest results should

have been admitted under <u>Rules</u> 402 and 403 because they were evidence that she was not intoxicated.  We are unpersuaded by defendant's arguments.

Ondish testified the Alcotest resulted in a control test failure.  He believed the failure was because "[defendant] sucked in on the hose, instead of blowing into the hose."[1]  Due to the control test failure, the State did not rely on the Alcotest test results as proof of defendant's DWI.  The municipal court judge did not admit the Alcotest results because they were derived from an improperly functioning machine, therefore they were not reliable evidence to prove or disprove defendant's intoxication.  The Law Division reasoned that since the results from the incident were not moved into evidence during the municipal court trial, it could not consider it on de novo review.  The Law Division also noted that because the State was not relying on the Alcotest results, defendant's argument to admit them was "misplaced."

---

[1] Ondish then transported defendant to Sparta Township to readminister the Alcotest.  Defendant refused to take the test, resulting in Ondish issuing her summonses for refusal to submit to a breathalyzer/chemical test, N.J.S.A. 39:3-10.24, and refusal to submit to chemical test, N.J.S.A. 39:4-50.4a.  The municipal court judge found her not guilty of the former charge but guilty of the latter charge.  The Law Division reversed the guilty verdict for refusal to submit to chemical test, because the State failed to establish beyond a reasonable doubt that defendant was advised of the consequences of refusing to submit.

Because there was a control test failure, it was proper for both courts to find the Alcotest results were inadmissible. See Chun, 194 N.J. at 134 (reiterating that as a pre-condition for admissibility of Alcotest results, the State must establish by clear and convincing evidence that: (1) the Alcotest was in working order and had been "inspected according to procedure"; (2) "the operator was certified"; and (3) the operator administered the test "according to official procedure"). Results derived from an improperly functioning Alcotest machine are not reliable evidence to prove or disprove defendant's intoxication. The results, therefore, did not "hav[e] a tendency in reason to prove or disprove any fact of consequence," N.J.R.E. 401, nor did they have any "probative value," N.J.R.E. 403. Hence, there was no abuse of discretion in refusing to admit the Alcotest results. See State v. Buda, 195 N.J. 278, 294-95 (2008) (holding we affirm a trial court's evidentiary ruling absent an abuse of discretion).

Lastly, defendant argues the State did not prove that the Alcotest results below .08% demonstrated she was not intoxicated. She argues Ondish was not an expert qualified to testify that she was intoxicated and the testimony of one officer is not sufficient to prove the State's case. She also argues Ondish is not a credible witness because he testified "I do not recall" multiple times during the trial and is biased against her. In addition, defendant cites the "Confusion

6

Doctrine,"[2] claiming she did not understand Ondish's directions during his administration of the field sobriety tests on her because English was not her first language. Again, we are unpersuaded.

---

[2] The "Confusion Doctrine" is a discreet doctrine recognized in some jurisdictions regarding the warnings required under Miranda v. Arizona, 384 U.S. 436 (1966) and used to find a motorist guilty of refusing take a breathalyzer test. As explained by our Supreme Court,

> [s]ome jurisdictions have held that when a motorist is confused by the two warnings concerning assistance of counsel—one warning (Miranda) according the assistance of counsel, the other (breath test refusal) not according assistance of counsel—and then refuses to take the breath test in the mistaken belief that the refusal is privileged, the motorist should not suffer the consequences of confusion and not be penalized for the refusal.
>
> State v. Leavitt, 107 N.J. 534, 538-39 (1987) (emphasis omitted) (citations omitted).

The doctrine has been discussed in two published cases in New Jersey, Leavitt and State v. Sherwin, 236 N.J. Super. 510 (App. Div. 1989), but our courts have never embraced or applied the doctrine. In Leavitt, the Supreme Court stated,

> Without resolving whether any defendant may validly assert the defense, we agree with the view expressed in the Attorney General's brief that the "exclusive, narrow exception to the general rule that refusals cannot be validly justified," would have to be premised on a record developed by a defendant to show that he had indeed been confused.

On appeal from a municipal court to the Law Division, the review is de novo on the record. R. 3:23-8(a)(2). The Law Division judge must make independent "findings of fact and conclusions of law but defers to the municipal court's credibility findings." State v. Robertson, 228 N.J. 138, 147 (2017). Our assessment of the Law Division judge's factual findings is limited to whether the conclusions "could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). Unlike the Law Division, we do not independently assess the evidence. State v. Locurto, 157 N.J. 463, 471 (1999). The rule of deference is compelling where, such as here, the municipal and Law Division judges made concurrent findings. Id. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)). "Therefore, appellate review of the factual and credibility findings of the

---

107 N.J. at 542.

In Sherwin, we held, "[l]ike the [Supreme Court] in Leavitt, we decline to resolve the issue of whether a defendant may validly invoke the 'confusion doctrine' in this State because the record here does not support the asserted claim." 236 N.J. at 518.

municipal court and the Law Division 'is exceedingly narrow.'" State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470).

Guided by these standards, we are satisfied Law Division Judge David Ironson thoroughly reviewed the record and properly found that Ondish gave sufficient credible testimony that he observed defendant driving while she was intoxicated. Specifically, he testified that he observed defendant driving erratically: changing lanes without utilizing a blinker, rapidly accelerating from forty-five miles per hour to sixty-five miles per hour, going over the shoulder and the marked traffic lines numerous times, and, at least on one occasion, swerving to avoid striking another vehicle. When he approached her vehicle, Ondish observed defendant had bloodshot eyes, slurred speech, and the smell of alcohol was "emanating . . . profusely" from her car. Ondish stated defendant provided the wrong documents when she produced her driving documentation and admitted to having consumed at least one shot of Fireball alcohol.

Furthermore, Ondish administered several field sobriety tests, which defendant could not successfully perform. He testified defendant counted backwards from ninety-nine to eighty, then skipped to number seventy-five and then continued to count to seventy, nodding her head and pausing for long periods of time between numbers. Defendant also could not recite the full

alphabet and was unsuccessful both times she did the one-leg stand test and during the walk-and-turn test.

Defendant testified that after being instructed by Ondish to recite the alphabet, she "told him right away" that she can complete the test in German, her native language. As for the counting, she stated she told Ondish that she could do it better in German than in English, but Ondish directed her to do so in English. Defendant acknowledged understanding Ondish's instructions in English, but claimed she was "very distressed."

When asked whether defendant "seemed able to understand [him]," Ondish stated, "yes." When asked whether it was "apparent to [him] that English was not her first language," Ondish replied, "yes . . . she had an accent." Thereafter, when asked whether "she ever [said] to [him] that . . . she had difficulty in English," Ondish stated, "she may have mentioned it."

Judge Ironson, as did the municipal court, found Ondish credible and defendant not credible regarding her claim that her language barrier negatively impacted her ability to perform the field sobriety tests. The judge held:

> With regard to [defendant]'s contention that her test performances were impacted by a language barrier, the [c]ourt finds that the proofs fail to establish same. During the [m]unicipal [c]ourt [t]rial, when . . . Ondish was asked whether there were language difficulties between him and [defendant], he testified that

10

> [defendant] did not request an interpreter, did not express any difficulty in communicating with him or understanding English, that he does not recall whether [defendant] indicated that she could perform these tests in German, and that he did not know what her first language was until trial.

Judge Ironson noted defendant did not request an interpreter at the municipal court trial—the municipal court judge determined that she has "no problem at all with the English language"—and when he asked her whether she needed the assistance of an interpreter at the trial de novo, she stated: "I do not need it. No. Absolutely not." The judge also pointed out that

> while largely unsuccessful, [defendant] complied with . . . Ondish's commands given in English. For example, when asked to produce documentation, [defendant] attempted to do so. When asked to perform tests, [defendant] attempted to do so. [Defendant] also acknowledged understanding . . . Ondish's instructions in English, but claimed she was "very distressed."

In sum, the judge agreed with the municipal court that "[defendant]'s testimony [was not] credible, dismissing it as 'self-serving' and not 'ring[ing] true.'"

We conclude the record supports Judge Ironson's credibility findings that there was no language barrier to defendant's ability to follow Ondish's instructions regarding the administration of the field sobriety tests and Ondish's observations of defendant's failed performance of the tests. Thus, the State provided sufficient evidence that defendant was guilty of DWI.

11

To the extent we have not addressed any of defendant's arguments, it is because we have concluded they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0421-19