18 A.3d 1044 (2011)
420 N.J. Super. 58
STATE of New Jersey, Plaintiff-Appellant,
v.
Gerald E. NUNNALLY, Defendant-Respondent.
No. A-6031-09T1.
Superior Court of New Jersey, Appellate Division.
Submitted January 31, 2011.
Decided May 4, 2011.
*1046 John L. Molinelli, Bergen County Prosecutor, attorney for appellant (Catherine A. Foddai, and Annmarie Cozzi, Senior Assistant Prosecutors, of counsel and on the briefs).
Terence M. Scott, Clifton, attorney for respondent.
Before Judges LISA, REISNER and SABATINO.
The opinion of the court was delivered by
REISNER, J.A.D.
While driving a commercial vehicle, defendant Gerald E. Nunnally was arrested for a suspected violation of N.J.S.A. 39:3-10.13 (prohibiting operation of a commercial motor vehicle by a driver "with an alcohol concentration of 0.04% or more.").[1] After defendant refused to submit to an Alcotest, the arresting officer also charged him with violating the general refusal statute, N.J.S.A. 39:4-50.4a,[2] instead of the statute pertaining to refusal by a person driving a commercial vehicle, N.J.S.A. 39:3-10.24 (CDL refusal statute). The Law Division dismissed the refusal charge, agreeing with the municipal judge that the State could not prosecute defendant under the general refusal statute in these circumstances and the State could not amend the complaint to charge defendant with CDL refusal, on the day of trial and after the ninety-day statute of limitations had run. The State appealed.
Because CDL refusal is not a lesser included offense of general refusal, we agree that the State was precluded from amending the complaint to charge CDL refusal after the statute of limitations expired. We also hold that the driver of a commercial vehicle who is arrested and charged only with CDL DUI, N.J.S.A. 39:3-10.13, and who thereafter refuses a breath test, may only be charged under the cognate CDL refusal statute, N.J.S.A. 39:3-10.24, and may not be prosecuted under the general refusal statute, N.J.S.A. 39:4-50.4a. Therefore, we affirm the decision of the Law Division.
For future guidance, we note that a commercial vehicle driver whose conduct violates both the general and CDL DUI statutes may be arrested and charged under both statutes. If the driver then refuses a breath test after being advised of *1047 the consequences of refusal pertaining to both statutes, the driver may also be charged under both refusal statutes.[3] Finally, if law enforcement perceives potential difficulties in enforcing the CDL DUI statute, because it prohibits driving with a BAC of .04% or higher but does not specifically prohibit "driving under the influence of intoxicating liquor," those concerns should be directed to the Legislature.

I
We briefly summarize the parties' factual allegations to place our legal conclusions in context. The State contended that on December 19, 2009, a group of school children flagged down a Glen Rock police car and reported that a Department of Public Works (DPW) plow truck[4] had just hit two traffic signs and driven away. After following the truck to the DPW yard, a police officer observed that defendant, the driver, had bloodshot watery eyes and slurred speech, smelled of alcohol, and could not walk or stand without assistance. According to the initial police report, defendant admitted that he had been drinking. When defendant repeatedly failed to blow properly into the Alcotest machine, after being read the warnings pertaining to CDL refusal, he was cited for refusal to take a breath test under the general refusal statute, N.J.S.A. 39:4-50.4a.
Defendant denies that he was intoxicated, contending that his condition was attributable to several serious health problems that caused his blood sugar to become "dangerously low."

II
On this appeal, the State raises three arguments. First, it contends that the proposed amendment was solely to correct a "technical defect" in the complaint and was therefore permissible under Rule 7:2-5. Second, the State argues that under Rule 7:14-2, the amendment should have been permitted because "a CDL refusal is the same substantive offense or a lesser included offense of a general refusal." Finally, the State asserts that it can prosecute defendant for violating the general refusal statute, which was cited in the complaint. We begin by addressing the State's arguments based on the Rules.
A complaint for refusing a breath test must be made within ninety days after the commission of the offense. N.J.S.A. 39:5-3(b). This provision operates as a statute of limitations in that it bars prosecution unless the complaint is made within the time limit. State v. Wallace, 201 N.J.Super. 608, 611, 493 A.2d 645 (1985). There is no dispute that, well within the time limit, defendant was issued a Uniform Traffic Ticket, which served as a combined complaint and summons. See R. 7:2-1(f); State v. Fisher, 180 N.J. 462, 464, 852 A.2d 1074 (2004). "[O]nce service of process occurs within the mandated time, i.e., `timely notice of the allegations charged' is received by the defendant, formal errors or omissions may be corrected within a reasonable time." State v. Buczkowski, 395 N.J.Super. 40, 43-44, 928 A.2d 85 (App.Div.2007) (citations omitted).
*1048 The State contends that citing the wrong refusal statute was a technical defect that could be cured by amendment under Rule 7:2-5. This rule provides that "[n]o person ... appearing in response to a summons shall be ... dismissed because of any technical insufficiency or irregularity in the ... summons, but the ... summons may be amended to remedy any such technical defect." Ibid. In the alternative, the State relies on Rule 7:14-2, which permits the municipal court to "amend any process or pleading for any omission or defect." However, "no such amendment shall be permitted which charges a different substantive offense, other than a lesser included offense." Ibid.
Construing the two rules in pari materia, we conclude that a failure to cite the correct substantive offense is not a "technical defect" subject to amendment under Rule 7:2-5. Otherwise, there would be no need for the specific restriction in Rule 7:14-2 against amending a complaint to charge a different substantive offense other than a lesser included offense. Further, allowing an amendment to cite a different offense is fundamentally different than amending to correct a minor defect, such as the lack of a signature or naming the wrong jurisdiction in which the offense occurred.
"Our court rules are designed to ensure that traffic offenses are decided on the merits rather than dismissed on technicalities." State v. Fisher, supra, 180 N.J. at 469, 852 A.2d 1074. However, "[l]ike a criminal indictment," the "primary purpose" of a traffic ticket is "`to inform a defendant of the charges he must defend against'" and to "`ensure protection from being subsequently placed in jeopardy for the same offense.'" Id. at 468, 471, 852 A.2d 1074 (citations omitted). A proposed amendment to a complaint must be considered in light of those purposes.
The cases that have allowed amendments under Rule 7:2-5 support our view of what constitutes a technical amendment. In Fisher, for example, the Court held that a police officer's failure to sign a complaint was a technical defect that could be cured by amendment. In reaching that conclusion, the Court considered that the complaint, though unsigned, adequately put the defendant on notice of the charges against him, thereby "safeguarding the defendant's right to procedural due process." Id. at 472, 852 A.2d 1074. Further, allowing an amendment to add the signature would not interfere "with his defense on the merits." Id. at 471. Fisher cited similar cases permitting amendment where an officer failed to sign a DWI summons, State v. Latorre, 228 N.J.Super. 314, 549 A.2d 871 (App.Div.1988), and where the complaint listed the wrong municipality as the location of the offense, State v. Ryfa, 315 N.J.Super. 376, 718 A.2d 717 (Law Div.1998). See also State v. Vreeland, 53 N.J.Super. 169, 147 A.2d 49 (App.Div.1958)(listing the wrong municipality on the complaint).
In order to prepare a defense, a defendant must know the offense with which he or she is charged, including the facts the State must prove to establish that offense. State v. Franklin, 184 N.J. 516, 534, 878 A.2d 757 (2005) (citing State v. Wein, 80 N.J. 491, 497, 404 A.2d 302 (1979)).[5] In the Criminal Code, a lesser included offense is defined as an offense that can be "established by proof of the same or less than all the facts required to establish the commission of the offense charged." *1049 N.J.S.A. 2C:1-8d(1). See State v. Parkins, 263 N.J.Super. 423, 425-26, 622 A.2d 1370 (Law Div.1993).
We conclude that CDL refusal is not a lesser included offense of general refusal, because the two offenses require proof of different facts. As discussed in greater detail in section III B, infra, general refusal and CDL refusal require as an element proof that the driver was arrested for, respectively, general DUI or CDL DUI. A driver arrested only for CDL DUI cannot be charged with general refusal based on that arrest.
Additionally, while both offenses require proof that the defendant refused to submit to a breath test, N.J.S.A. 39:3-10.24f and N.J.S.A. 39:4-50.4a(a), the CDL refusal statute requires proof that
the arresting officer had probable cause to believe that the person had been operating or was in actual physical control of a commercial motor vehicle on the public highways or quasi-public areas of this State with an alcohol concentration at 0.04% or more.

[N.J.S.A. 39:3-10.24f (emphasis added).]
On the other hand, the general refusal statute requires proof that
the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State while the person was under the influence of intoxicating liquor.

[N.J.S.A. 39:4-50.4a(a) (emphasis added).]
A driver is "under the influence" of alcohol, N.J.S.A. 39:4-50, when his or her "physical coordination or mental faculties are deleteriously affected." State v. Emery, 27 N.J. 348, 355, 142 A.2d 874 (1958). The CDL statute requires different proof than the general statute, in that the officer must have probable cause to believe that the commercial vehicle driver had at least a .04% BAC, as opposed to being "under the influence" of alcohol.[6]
In critical respects, the elements of CDL refusal "are not lesser, but different than" the elements for general refusal. State v. Parkins, supra, 263 N.J.Super. at 425, 622 A.2d 1370. Therefore, it is not the same or a lesser included offense, and the State was not entitled to amend the complaint on the day of trial to charge defendant with CDL refusal.[7]R. 7:14-2.

III
We also reject the State's argument that defendant could be prosecuted under the general refusal statute, N.J.S.A. 39:4-50.4a. We agree with the State that, in appropriate circumstances, the driver of a commercial vehicle can be prosecuted under the general DUI and general refusal statutes and, in appropriate circumstances, may be charged with both CDL and general offenses. To put our ruling in context, we think it worthwhile to describe the statutory scheme as it bears on this point.

A.
As noted above, the general refusal statute penalizes anyone operating a "motor *1050 vehicle" in a public or quasi-public area who refuses to provide a breath sample when a police officer has reasonable grounds to believe that the driver is operating the motor vehicle while under the influence of intoxicating liquor. N.J.S.A. 39:4-50.2, -50.4a. A "motor vehicle" is defined as "all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks and motorized bicycles." N.J.S.A. 39:1-1.
The CDL refusal statute penalizes any driver operating a "commercial motor vehicle" who refuses to submit to a breath test when the police officer requesting the test has reasonable grounds to believe that the driver was operating the vehicle with a BAC at or in excess of 0.04%. N.J.S.A. 39:3-10.24. A "commercial motor vehicle" is defined as "every type of motor-driven vehicle used for commercial purposes on the highways, ... excepting such vehicles as are run only upon rails or tracks and vehicles of the passenger car type used for touring purposes or the carrying of farm products and milk." N.J.S.A. 39:1-1.[8] We conclude that under Title 39, at least as it pertains to DUI-related offenses, commercial motor vehicles are to be treated as a subset of the larger category of motor vehicles, and the driver of a commercial vehicle may be charged under either or both the general or CDL-specific portions of the statute.
We find further support for this view in N.J.S.A. 39:3-10.20(a)(4), which contemplates that a commercial vehicle driver may be charged with violating a more general section of the statute pertaining to "motor vehicles":
a. In addition to the imposition of any other penalty provided by law, the chief administrator shall suspend for not less than one year nor more than three years the commercial motor vehicle driving privilege of a person convicted for a first violation of:
(1) R.S.39:4-50 if the motor vehicle was a commercial motor vehicle or section 5 [C.39:3-10.13] of this act.
....
(4) Refusal to submit to a chemical test under section 2 of P.L.1966, c. 142 (C.39:4-50.2) or section 16 [C.39:3-10.24] of this act if the motor vehicle was a commercial motor vehicle.

[N.J.S.A. 39:3-10.20(a) (emphasis added).]
The statute first referenced in subsection (1), N.J.S.A. 39:4-50, sets forth the general provision prohibiting driving "a motor vehicle while under the influence of intoxicating liquor." N.J.S.A. 39:4-50(a). The second statute cited in (1) is the specific prohibition against driving "a commercial motor vehicle in this State with an alcohol concentration of 0.04% or more." N.J.S.A. 39:3-10.13. Thus, we infer that an intoxicated driver of a commercial vehicle may be charged with a violation of the general DUI statute or with a violation of the DUI statute pertaining specifically to commercial vehicles.
Turning to subsection (4), the statute refers in the alternative to a charge under the general refusal statute, N.J.S.A. 39:4-50.2, or the refusal statute pertaining specifically to commercial vehicle drivers, N.J.S.A. 39:3-10.24. Taken in context, we construe subsection (4), like subsection (1), as evincing the Legislature's intent that the driver of a commercial vehicle may be charged under either the refusal statute pertaining generally to drivers of motor vehicles or the provision pertaining specifically to drivers of commercial vehicles.
*1051 While the two subsections are worded somewhat differently, it is clear that subsections (a)(1) and (a)(4) both refer to charges that may be brought against a commercial licensee who is driving a commercial vehicle. Two separate subsections, (j)(1) and (j)(3), specifically require a one-year commercial license suspension to be imposed on any commercial driver convicted of either DUI or refusal while driving a non-commercial vehicle. N.J.S.A. 39:3-10.20(j)(1) and -10.20(j)(3).
One of the evident purposes of section 10.20 was to ensure that drivers of commercial vehicles will suffer the same length of suspension of their commercial drivers licenses regardless of whether they are convicted under the general statute or the commercial driver statute. For example, the ordinary penalty for a first-time general DUI conviction is a three-month suspension of one's general driver's license, or a suspension of seven months to a year, depending on the driver's BAC. N.J.S.A. 39:4-50(a)(1)(i), -50(a)(1)(ii). The ordinary penalty for a first-time refusal is a suspension of seven months to a year. N.J.S.A. 39:4-50.4a(a). However, in enacting N.J.S.A. 39:3-10.20(a), the Legislature ensured that, whether convicted under the general or CDL portions of the DUI or refusal statutes, a commercial vehicle driver will suffer the enhanced commercial drivers license suspension, set at one to three years.[9]
Furthermore, the Legislature has recognized the possibility that a defendant might be convicted under the general and CDL refusal statutes due to a single incident. Under such circumstances, the Legislature has explicitly mandated that the two offenses would not merge. N.J.S.A. 39:3-10.20(i) (precluding application of the merger doctrine where a defendant has been convicted under the general refusal and/or drunk driving statutes and the CDL refusal and/or drunk driving statutes). See Robert Ramsey, New Jersey Drunk Driving Law (2010 ed.) at 1627.
The plow truck defendant operated on December 19, 2009 was both a motor vehicle and a commercial motor vehicle. The State alleged that defendant was arrested because he was driving erratically, smelled of alcohol, exhibited glassy eyes, slurred his speech, could not walk or sit without assistance, and admitted to the police that he had "been drinking all day." The arresting officer therefore could have arrested him for violating the general DUI statute, as well as the CDL DUI statute. See United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755, 764 (1979); State v. Kittrell, 145 N.J. 112, 128-30, 678 A.2d 209 (1996); N.J.S.A. 2C:1-8a ("When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense"). But he did not do so. As discussed in the next section, that omission precluded the State from charging and prosecuting defendant under the general refusal statute, N.J.S.A. 39:4-50.4.

B.
The general refusal statute has three pertinent sections. The first section provides that any driver is deemed to have consented to take a breath test, if that driver has been requested to take the test by a police officer who has probable cause to believe that the driver has violated the general DUI statute, N.J.S.A. 39:4-50:
Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be *1052 deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act [C.39:4-50.1 et seq.] and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S.39:4-50 or section 1 of P.L.1992, c. 189 (C.39:4-50.14) [pertaining to underage drivers].
[N.J.S.A. 39:4-50.2(a)]
A second section specifically refers to the requirement that the driver be arrested:
(e) No chemical test, as provided in this section, or specimen necessary thereto, may be made or taken forcibly and against physical resistance thereto by the defendant. The police officer shall, however, inform the person arrested of the consequences of refusing to submit to such test in accordance with section 2 [C.39:4-50.4a] ... A standard statement, prepared by the chief administrator, shall be read by the police officer to the person under arrest.

[N.J.S.A. 39:4-50.2(e) (emphasis added).]
The penalties for general refusal are set forth in a third section, N.J.S.A. 39:4-50.4a, which specifically requires proof that the driver refused the breath test after being arrested for general DUI. That section provides, in pertinent part, that
the municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of R.S.39:4-50 or section 1 of P.L.1992, c. 189 (C.39:4-50.14), shall refuse to submit to a test provided for in section 2 of P.L.1966, c. 142 (C.39:4-50.2) when requested to do so.
[N.J.S.A. 39:4-50.4a(a) (emphasis added).]
In State v. Marquez, 202 N.J. 485, 998 A.2d 421 (2010), the Court read N.J.S.A. 39:4-50.2 and -50.4a in pari materia to determine the elements of general refusal:
A careful reading of the two statutes reveals four essential elements to sustain a refusal conviction: (1) the arresting officer had probable cause to believe that defendant had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol or drugs; (2) defendant was arrested for driving while intoxicated; (3) the officer requested defendant to submit to a chemical breath test and informed defendant of the consequences of refusing to do so; and (4) defendant thereafter refused to submit to the test.
[Id. at 503, 998 A.2d 421 (emphasis added; citations omitted).]
Applying a similar analysis, we conclude that the CDL refusal statute requires proof of these elements: (1) the arresting officer had probable cause to believe that the driver was operating or in physical control of a commercial vehicle while having a BAC of .04% or higher; (2) the driver was arrested for a violation of the CDL DUI statute; (3) the officer requested the driver to submit to a breath test and advised the driver of the legal consequences that are specifically applicable to CDL refusal; and (4) after receiving this advice, the driver refused to take the breath test. Our reasoning is as follows.
The CDL refusal statute, N.J.S.A. 39:3-10.24, deems a commercial driver to have given consent to take a breath test under circumstances that include the arresting officer having probable cause to believe that the driver has a BAC of .04% or higher:
a. A person who operates a commercial motor vehicle on a public road, street, or highway, or quasi-public area in this State, shall be deemed to have *1053 given his consent to the taking of samples of his breath for the purposes of making chemical tests to determine alcohol concentration; provided, however, that the taking of samples shall be made in accordance with the provisions of this act and at the request of a police officer who has reasonable grounds to believe that the person has been operating a commercial motor vehicle with an alcohol concentration of 0.04% or more.

[N.J.S.A. 39:3-10.24(a) (emphasis added).]
In addition, the officer must read the arrested driver a standard statement, warning the driver of the consequences of refusing to take the breath test, and specifically, of the statutory penalties for CDL refusal:
e. No chemical test ... may be made or taken forcibly.... The police officer shall, however, inform the person arrested of the consequences of refusing to submit to such test including the penalties under section 12 [C.39:3-10.20] of this act. A standard statement, prepared by the director, shall be read by the police officer to the person.
[N.J.S.A. 39:3-10.24(e) (emphasis added).]
The statute specifies that an arrest is required in order to charge and penalize a driver for CDL refusal:

The court shall determine by a preponderance of the evidence whether the arresting officer had probable cause to believe that the person had been operating or was in actual physical control of a commercial motor vehicle on the public highways or quasi-public areas of this State with an alcohol concentration at 0.04% or more, whether the person was placed under arrest, whether he refused to submit to the test upon request of the officer, and if these elements of the violation are not established, no conviction shall issue.
[N.J.S.A. 39:3-10.24 (emphasis added).]
Reading all of the pertinent sections of N.J.S.A. 39:3-10.24 together, we infer that the "arrest" which is required is an arrest for CDL DUI. Otherwise, it would make no sense to also require that the arresting officer have probable cause to believe that the driver had a BAC of at least .04%, which is the BAC applicable to CDL DUI.
The State concedes that an arrest under the CDL DUI statute is an element of the CDL refusal statute, and that a defendant may not be prosecuted for CDL refusal based on an arrest for general DUI. We agree. However, the State argues that an arrest for CDL DUI may nonetheless serve as the predicate for a prosecution under the general refusal statute. We disagree, for the reasons previously stated as well as for the following reasons.
The implied consent, or "refusal" statutes, are a necessary adjunct to the DUI laws, because they provide a source of proof of the predicate offense for which the motorist is arrested. As the Supreme Court explained in Marquez:
Enforcement was undermined, ... because drivers did not have to submit to blood-alcohol tests and faced no penalties if they refused to do so. Refusal rates nationally were as high as 92%....
As a result, in 1966, the Legislature enacted both an implied consent law, N.J.S.A. 39:4-50.2, and a refusal statute, N.J.S.A. 39:4-50.4. .... The simultaneous passage of those laws was designed to encourage people arrested for drunk driving to submit a breath sample and to enable law enforcement to obtain objective scientific evidence of intoxication.
[Marquez, supra, 202 N.J. at 497, 998 A.2d 421 (citations omitted).]
*1054 See also State v. Eckert, supra, 410 N.J.Super. at 396-97, 982 A.2d 469. It therefore makes logical sense that an arrest for the predicate offense is an element of the corresponding refusal offense, because the purpose of the breath test is to obtain "scientific evidence" to prove the offense for which the person was arrested. Marquez, supra, 202 N.J. at 497, 998 A.2d 421. Of course, the Legislature conceivably could have structured the general and CDL refusal laws differently, to permit prosecution for general refusal based on an arrest for CDL DUI, but that is not how the laws were written. Further, even if we deemed the refusal statutes to be ambiguous, because they are quasi-criminal we would be constrained to construe them narrowly, in favor of the defendant. See State v. Churchdale Leasing, 115 N.J. 83, 102, 557 A.2d 277 (1989); State v. Dively, 92 N.J. 573, 585, 458 A.2d 502 (1983).
Finally, we do not address the State's argument that the CDL DUI statute must be construed to include driving under the influence of intoxicating liquor, in addition to driving with a BAC of .04% or higher. We note that the officer's observations in this caseof a driver who appeared to be "falling down drunk" and who admitted he had been drinking all daymight provide probable cause to believe that the driver had a BAC of .04% or higher. Certainly, a driver in that condition could be arrested on suspicion of general DUI. However, if law enforcement agencies perceive a problem in enforcing the CDL DUI statute as currently written, that concern should be addressed to the Legislature.
Affirmed.
NOTES
[1] The State did not appeal from the dismissal of the driving under the influence (DUI) complaint, based on its lack of proof that defendant had a blood alcohol level of .04% or higher. See N.J.S.A. 39:3-10.13. Thus, the State has waived its right to pursue that charge.
[2] The penalty section of the general refusal statute is N.J.S.A. 39:4-50.4a. However, violations of the general refusal statute are frequently cited with reference to N.J.S.A. 39:4-50.2, even in other legislative enactments. See State v. Cummings, 184 N.J. 84, 90 n. 1, 875 A.2d 906 (2005); N.J.S.A. 39:3-10.20(i).
[3] The Legislature contemplated that a commercial vehicle driver might be charged with violations of both the CDL and general DUI and refusal statutes, and specifically provided that those offenses do not merge. N.J.S.A. 39:3-10.20(i). We view the anti-merger statute as evidence that the Legislature recognized the general and CDL violations as separate offenses with different elements. We intimate no view as to whether the anti-merger provision may always be enforced consistent with double jeopardy principles. See State v. Dillihay, 127 N.J. 42, 48, 601 A.2d 1149 (1992); State v. Eckert, 410 N.J.Super. 389, 400-03, 982 A.2d 469 (App.Div. 2009).
[4] Apparently, the reference was to a dump truck with a snow plow attached to the front.
[5] This is not a case in which the charging document gave defendant notice of the evidence supporting a violation of one statute but cited to another statute. The ticket issued to defendant did not recite the elements of CDL refusal. It simply noted that he was being charged with violating "N.J.S.A. 39:4-50.2."
[6] The Legislature adopted the .04% BAC standard for commercial vehicle drivers to ensure that New Jersey law would be consistent with the standards set forth in the federal Commercial Motor Vehicle Safety Act of 1986. See 49 U.S.C.A. §§ 31306, 31310(a). Consistency was required to avoid losing federal highway funding. See Assembly Statement to A-3258; 49 U.S.C.A. § 31311(a)(3).
[7] Nor is general refusal a lesser included offense of CDL refusal. In addition to the different arrest elements, some drivers may appear unaffected by alcohol, and be able to drive safely, despite having a BAC of .04%. In that sense, the commercial DUI standard is more stringent than the general DUI standard, which sets .08% BAC as the level of presumptive intoxication.
[8] Although the definition of "commercial motor vehicle" does not specifically exclude motorized bicycles, the definition of "vehicle" excludes "motorized bicycles." N.J.S.A. 39:1-1.
[9] The CDL suspension is in addition to any other penalty that may be imposed as "provided by law." N.J.S.A. 39:3-10.20(a).