**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5612-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANIELLE JAMARINO,

    Defendant-Appellant.

_____

Submitted April 29, 2019 – Decided May 31, 2019

Before Judges Sabatino and Susswein.

On appeal from Superior Court, Law Division, Ocean County, Municipal Appeal No. 17-07.

John Menzel, attorney for appellant.

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, Senior Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Danielle Jamarino appeals from her convictions for driving while intoxicated ("DWI") and for refusing to submit to a breath test ("refusal"). Defendant raises three issues on appeal. She contends, first, that the summons-complaint that charged her with refusal was fatally defective because it mistakenly cited to N.J.S.A. 39:4-50.2 rather than to the correct citation of N.J.S.A. 39:4-50.4; second, that the Point Pleasant Beach Police Department lacked procedures to safeguard her right to get an independent blood analysis; and third, that the officer who administered the "standard statement" at the police station failed to read the final portion of the statement.

All three contentions were addressed and rejected by the municipal court judge who conducted the bench trial and the Superior Court judge who conducted the trial de novo on defendant's appeal to the Law Division. We have considered each of defendant's contentions on appeal in light of the record and applicable legal principles and conclude that they are without merit. We therefore affirm the convictions for both DWI and refusal.

I.

We rely on the trial record and the findings of the municipal court judge who conducted the bench trial and the Superior Court judge who heard the trial

de novo on appeal to the Law Division. We briefly summarize the facts elicited at trial to place our legal conclusions in context.

On November 3, 2016, police received a report of a vehicle being driven erratically. Then-sergeant Gerald Quaglia[1] observed defendant's vehicle pass his patrol car travelling in excess of the posted speed limit. He ordered defendant to pull over, and she complied, pulling into the parking lot of a diner. The officer noticed that her face was flush and her eyes were watery and bloodshot. He also detected the odor of alcohol on her breath. When questioned, she stated that she had consumed three or four glasses of wine.

Defendant had difficulty maintaining her balance as she exited her vehicle. Lieutenant Quaglia administered a battery of field sobriety tests, which she failed. For example, she recited the alphabet only up to the letter "T," at which point she had to start over. She could not perform the "walk and turn" test while keeping her arms at her side and walking heel-to-toe. Nor could she perform the one-legged-stand test.

---

[1] Sergeant Quaglia was promoted to the rank of lieutenant before the trial was heard and he was referred to at trial as Lieutenant Quaglia.

Based on his observations, Lieutenant Quaglia arrested defendant for drunk driving and she was transported to the police station. There, Lieutenant Quaglia administered the Miranda[2] warnings and read the "N.J. ATTORNEY GENERAL'S STANDARD STATEMENT FOR MOTOR VEHICLE OPERATORS (N.J.S.A. 39:4-50.2(e) (revised & effective July 1, 2012))." Paragraph No. 9 of that "standard statement" reads, "I repeat, the law requires you to submit samples of your breath for testing. Will you submit samples of your breath?" Defendant unequivocally answered "no" to that question.

At the conclusion of the bench trial, the municipal court judge made specific findings regarding the credibility of the trial witnesses, stating:

> I've sat in contemplation of these cases for well over 30 years, and I've seen officers that lie. I've seen defendants that lie. I have to tell you, this lieutenant's testimony here today was the most credible testimony I've seen in a long time. I'm not swayed by anything [the defendant] tells this Court. I am satisfied that the credible version of what occurred on the date and time in question is that presented on behalf of the State.

Based on the foregoing facts elicited at the trial, the municipal court judge acquitted defendant of reckless driving, but found her guilty of DWI based on the lieutenant's observational evidence and found her guilty of refusing to

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-5612-17T4

submit to a breath test. On a trial de novo to the Superior Court, the Law Division judge affirmed those convictions.

Defendant was sentenced on the DWI conviction to revocation of driving privileges for ninety days, to attend twelve hours at an Intoxicated Driver Resource Center (IDRC), a $360 fine, $350 in surcharges, and $33 in court costs. Defendant was sentenced on her refusal conviction to revocation of driving privileges for seven months to be followed by six months during which she must use an alcohol ignition interlock device, to attend twelve hours at an IDRC, a $360 fine, $100 in surcharges, and $33 in court costs. The suspension of driving privileges and IDRC sentences were ordered to be served concurrently. Execution of the sentence, including suspension of defendant's driving privileges, has been stayed throughout the pendency of this appeal.

## II.

On appeal, defendant raises the following contentions:

> I. THIS COURT SHOULD DISMISS COMPLAINT PPC-086217 CHARGING DEFENDANT WITH "REFUSAL" IN VIOLATION OF N.J.S.A. 39:4-50.2, BECAUSE REFERENCE TO THIS "IMPLIED CONSENT" STATUTE CONSTITUTES A FATAL DEFECT IN THAT THE STATUTE DOES NOT DEFINE AN OFFENSE.
>
> II. THIS COURT SHOULD DISMISS ALLEGATIONS BASED ON DEFENDANT'S

FAILURE TO SUBMIT BREATH SAMPLES BECAUSE THE POLICE DEPARTMENT LACKED PROCEDURES NECESSARY TO PROTECT HER RIGHTS.

III. THIS COURT SHOULD FIND DEFENDANT NOT GUILTY OF REFUSING TO SUBMIT BREATH SAMPLES BECAUSE THE EVIDENCE FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT WHETHER SHE WAS PROPERLY ADVISED OF HER RIGHTS AND OBLIGATIONS CONCERNING THE SUBMISSION OF BREACH SAMPLES.

A.

Defendant argues that the summons that charged her with refusal was fatally defective because it mistakenly cited to N.J.S.A. 39:4-50.2 rather than to N.J.S.A. 39:4-50.4. The State acknowledges the summons cites to the implied consent statutory provision in the motor vehicle code rather than to the statutory provision that actually defines the refusal offense. The legal question before us is whether this was merely a technical defect or whether instead it was a mistake of such magnitude as to require that we overturn defendant's refusal conviction.

In State v. Cummings, 184 N.J. 84 (2005), the Supreme Court commented in a footnote that care should be taken to list N.J.S.A. 39:4-50.4(a) rather than N.J.S.A. 39:4-50.2 when charging a refusal offense. Id. at 90 n.1. The Court also indicated "we see no prejudice resulting from it [the incorrect citation in the complaint]." Ibid.

6

In the case before us, as in Cummings, greater care should have been exercised in listing N.J.S.A. 39:4-50.4(a) in the body of the summons. But also as in Cummings, Jamarino was not prejudiced by the citation error. Defendant offers no explanation as to how or why the faulty citation inhibited her ability to prepare and present a trial defense. It is hard to imagine how she might possibly have been confused as to what specific offense she had to answer to at trial. In State v. Marquez, 202 N.J. 485 (2010), the Supreme Court recognized that N.J.S.A. 39:4-50.2 and N.J.S.A. 39:50.4 are "plainly interrelated" and that they "not only cross-reference one another internally, but they also rely on each other substantively. They must therefore be read together." Id. at 501-02.

Defendant relies on State v. Nunnally, 420 N.J. Super. 58 (App Div. 2011), for the proposition that the citation error was more than a technical defect. Her reliance on Nunnally is misplaced, however, as the circumstances presented in that case are markedly different from the situation presented in this appeal. In Nunnally, the defendant held a commercial driver's license (CDL) and was arrested for operating a commercial vehicle while under the influence. Id. at 62. The summons, however, charged the defendant with the general refusal offense, N.J.S.A. 39:4-50.4, rather than the distinct offense set forth in a different part of the motor vehicle code that applies to operators of commercial

7                                                    A-5612-17T4

vehicles, N.J.S.A. 39:3-10.24. The summons could not be amended on the day of trial to reflect the correct CDL refusal offense because the ninety-day statute of limitations had expired. Nunnally, 420 N.J. Super. at 62-63.[3]

We concluded in Nunnally that the error in the charging instrument was not merely a technical defect because the material elements of the general refusal offense are substantively different from the elements of the CDL refusal offense. For example, the CDL refusal statute requires that police have probable cause to believe that the driver has a 0.04% blood alcohol content (BAC), which is a much lower threshold than the one that applies to the general refusal statute. In short, the charging instrument averred the wrong offense, charging a different substantive offense than the one that the defendant had been arrested for and that the State sought to prosecute at trial.

We recognized in Nunnally that in order to prepare a defense, a defendant must know the offense with which he or she is charged. Id. at 66. In the circumstances presented in that case, the summons failed to provide the

---

[3] We noted in Nunnally that for future guidance, a commercial vehicle driver whose conduct violates both the general and CDL DWI statutes may be arrested and charged under both statutes. If the driver refuses a breath test after being advised of the consequences of refusal pertaining to both statutes, the driver may also be charged under both refusal statutes. Nunnally, 420 N.J. Super. at 63.

defendant with notice as to the specific offense that the State intended to prosecute at trial.

In the present case, in contrast, defendant was not charged with the wrong offense, that is, an offense different from the one for which she was arrested and eventually tried and convicted. Rather, the error in the charging instrument in the present case is that it refers to a statutory provision that does not define any offense at all. The provision cited in the charging instrument instead implements the so-called "implied consent" concept in our DWI enforcement jurisprudence, setting out the procedures police must follow for obtaining BAC samples when investigating a suspected violation of the refusal offense that is defined in another subsection of the motor vehicle code. However, the statutory provision that was listed in the summons that was issued to Jamarino explicitly cross-references the correct statutory provision, that is, the subsection of the motor vehicle code that does define the refusal offense.

Our determination in Nunnally that the charging instrument error was substantive and not merely technical was predicated on the self-evident proposition that in order to prepare a defense, a defendant must know the offense with which he or she is charged and must defend at trial. The error in that case was legally significant because the summons charged the wrong offense – one

that had different material elements – and thus had a clear capacity to mislead the defendant with respect to the material elements that the prosecutor needed to prove at trial.  The fair notice concern at the heart of the <u>Nunnally</u> decision simply does not exist in the present case because defendant was not misled into believing that she was charged with any offense other than the refusal offense for which she had been arrested and ultimately tried.  Accordingly, there is no reason to overturn defendant's refusal conviction.

B.

Defendant contends that the Point Pleasant Beach Police Department lacked procedures to safeguard her right to get an independent blood examination pursuant to N.J.S.A. 39:4-50.2(c).  That contention is clearly without merit because defendant never alerted police that she wanted an independent test.  Accordingly, her statutory right to have an independent examination performed was not invoked and thus could not be violated.

Defendant's reliance on <u>State v. Broadly</u>, 281 N.J. Super. 230 (Law Div. 1992), is misplaced.  In that case, the defendant went to a hospital and requested an independent blood test.  The hospital refused to take the blood sample without authorization from the police and the police officer who was contacted by the hospital refused to give the authorization.  <u>Id.</u> at 233-34.  The Law Division

judge concluded that the absence of a departmental policy designed to implement and safeguard the option of getting an independent blood test deprived Broadly of the statutory right under N.J.S.A. 39:4-50.2(c) to have the examination conducted by the hospital staff who were waiting for police authorization that was never provided.

The situation in the present case is markedly different from Broadly in that Jamarino never requested police to permit or facilitate independent testing. Absent a request to invoke the right to independent testing explained in paragraph No. 4 of the standard statement[4] that was read to her, the police would have no way of knowing that defendant wanted to have any such independent examination. Thus, even giving defendant the benefit of the assumption that she actually had a desire for independent testing at the time of her arrest, the fact that she did not communicate that desire is fatal to her claim on appeal. The right to independent testing established in N.J.S.A. 39:4-50.2(c) is not self-

---

[4] Paragraph No. 4 of the standard statement reads:

> After you have provided samples of your breath for testing, you have the right, at your own expense, to have a person or physician of your own selection take independent samples of your breath, blood or urine for independent testing.

executing. A defendant cannot complain that police deprived her of a right under this statute that was never asserted.

We believe that this issue is governed not by Broadly, but rather by the common sense reasoning in State v. Jalkiewicz, 303 N.J. Super. 430 (App. Div. 1997). We noted in Jalkiewicz that to be entitled to relief, "it must be shown that the absence of established police procedures has interfered with or thwarted defendant's attempt to exercise the right to an independent examination." Id. at 434. There was no such affirmative interference or thwarting in the case before us because there was no attempt to exercise the right to an independent examination. Just as the police in this case were given no opportunity to facilitate independent testing, they had no opportunity to impede it. What we are left with, therefore, is a totally hypothetical situation where a defendant belatedly asserts that she was denied a statutory right under circumstances where police could neither safeguard nor frustrate that right.

Although defendant's failure to advise police that she wanted an independent BAC test provides reason enough to reject her contention, we would add in the interest of completeness that the plain language of N.J.S.A. 39:4-50.2(c) suggests that the statutory right to independent testing can be invoked

12

only after a defendant has submitted to breath or blood testing at the direction of police. The statute provides:

> In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.
>
> [Ibid. (emphasis added).]

The highlighted language indicates that the independent examination contemplated in the statute is to be in addition to, not in lieu of, the samples that are provided by a DWI suspect to police pursuant to N.J.S.A. 39:4-50.2. This interpretation of the statute is supported by our opinion in Jalkiewicz, where we noted that the relief for deprivation of the statutory right to secure an independent examination is the exclusion of the evidence obtained by the police. Jalkiewicz, 303 N.J. Super. at 433-34. That form of relief is inapposite, of course, where there is no BAC evidence to suppress by reason of defendant's unlawful refusal to submit to breath testing.

This interpretation also is consistent with paragraph No. 4 of the standard statement that was read to defendant. That paragraph explains unambiguously that the right to an independent test arises "[a]fter you have provided samples of your breath for testing." See footnote 4. This interpretation of the implied-

consent statute by the Chief Administrator of the Motor Vehicle Commission is entitled to deference. See Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (an administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to an appellate court's deference); see also State v. Spell, 196 N.J. 537, 540 (2008) (deferring to authority of the Chief Administrator to prepare and revise the standard statement).

Finally, with respect to defendant's contention regarding the right to independent BAC testing, we note that it is not clear to us how this defendant would even know what the Point Pleasant Beach Police Department's procedures are for implementing N.J.S.A. 39:4-50.2. As noted above, the police were not afforded the opportunity to demonstrate either the adequacy or inadequacy of their independent-testing procedures. What is clear to us is that it would be inappropriate on these facts to reverse a DWI conviction that was based on the observational testimony of a police witness found to be exceptionally credible, predicated on a hypothetical deprivation of an unasserted right by a defendant who unlawfully refused to submit a breath sample.

C.

Defendant contends that the police did not read to her the last portion of the standard statement.[5] That is true. But it is also true that the arresting officer was not required to read the last paragraph of the standard statement, in view of defendant's unequivocal refusal to submit a sample of her breath.

Lieutenant Quaglia testified that he read the standard statement to the defendant and that when he asked in paragraph No. 9 if she would submit the samples of her breath, she said "no" and wrote her response on the form as "no." It is not disputed that the officer did not read the last paragraph of the standard statement.

---

[5] The phrase "last portion" or "second portion" refers to the last two unnumbered paragraphs of the standard statement form that was used in this case. Those paragraphs read:

> If the arrested person does not respond, or gives any ambiguous or conditional answer short of an unequivocal "yes," the police officer shall read the following:

> Your answer is not acceptable. The law requires that you submit samples of your breath for breath testing. If you do not answer with anything other than "yes," I will charge you with refusal. Now, I ask you again, will you submit to breath testing?

A-5612-17T4

The municipal court judge rejected defendant's testimony in which she claimed that the standard statement had not been read to her at all. The municipal court judge found that, "There's no doubt in my mind that the officer read the statement to the defendant." The municipal court judge also found that defendant was "advised under the Standard Statement that she had an obligation to submit to a breath test and she unequivocally responded no." The judge added that "there is nothing equivocal about the word no which was the defendant's response at the time. So there was no reason to read the second portion of the standard statement."

It is well-settled that we are to give deference to the factual findings of a trial court. In State v. Locurto, 157 N.J. 463 (1999), the defendant appealed a municipal court conviction to the Law Division, and the Superior Court judge's findings were predicated upon the credibility findings of the municipal court judge. In those circumstances, which are essentially the same as the circumstances in the present case, the Court in Locurto noted that:

> The rule of deference is more compelling where . . . two lower courts have entered concurrent judgments on purely factual issues. Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error.

16

[Id. at 474.]

See also State v. Reece, 222 N.J. 154, 166-67 (2015) (appellate review of the factual and credibility findings of the municipal court and the Law Division is exceedingly narrow). It bears repeating that the municipal court judge took pains to highlight Lieutenant Qauglia's credibility, remarking that the lieutenant's testimony was the most credible that the judge had seen in a long time. We also note that the standard statement entered into evidence and provided to us in the appendix to defendant's brief clearly indicates that a single word, "no," was recorded as the written answer to question No. 9.

The standard statement provides that the last paragraph need only be read to a DWI arrestee if he or she gives "any ambiguous or conditional answer short of an unequivocal 'yes.'" See footnote 5. We interpret that to mean that the last paragraph of the standard statement need not be read when the arrestee gives any unequivocal answer, be that answer yes or no.

Defendant relies on a portion of our opinion in State v. Spell, 395 N.J. Super. 337, 348 (App. Div. 2007), for the proposition that officers must read the last paragraph of the standard statement whenever the defendant refuses to take a breath test upon request. As defendant now puts it, in Spell, the Appellate

Division made a "suggestion"[6] when we remarked, "we think it prudent to hold that, effective on October 1, 2007, officers must read the additional paragraph of the form whenever the defendant refuses to immediately take the breathalyzer exam upon request." Ibid.

Defendant acknowledges that the Supreme Court expressly vacated the above-quoted portion of the Appellate Division opinion. Spell, 196 N.J. 537 (2008). Defendant nonetheless contends that the Supreme Court left the door open, arguing that the Supreme Court vacated that part of our decision only because "[t]he Appellate Division's holding that requires that police officers read that final, additional paragraph of the standard statement in all cases was not necessary to the determination of this case."[7] Ibid. Defendant contends that

---

[6] Our opinion in Spell makes clear that this was not a mere suggestion. On the contrary, the opinion unambiguously describes the prospective requirement to read the last paragraph in all cases where an arrestee refuses to immediately take a breath test as "our holding." Spell, 395 N.J. Super. at 348. So too, the Supreme Court refers to this portion of our opinion as "the Appellate Division's holding." Spell, 196 N.J. at 537.

[7] There can be no doubt that the language in our opinion that would have required police to read the last paragraph whenever a defendant refuses to immediately take a breath test was not "necessary to the determination of the case" because that requirement was made prospective only effective October 1, 2007 (our opinion in Spell was announced on July 31, 2007). We explicitly noted in this regard that "[b]y making our holding prospective, we avoid the problems of application to DWI arrests before that date and provide adequate

the Supreme Court did not "substantively disapprove" of a requirement to read the last portion in all cases, and she urges us in this appeal not only to resuscitate our previous holding but also tacitly requests us to make the new requirement retroactive so as to inure to her benefit.

We do not agree with defendant that the Supreme Court vacated that narrow portion of the otherwise-affirmed Appellate Division opinion in Spell solely because the redacted language was not necessary to the determination of that case. In fact, the Supreme Court in the very next sentence of its opinion explained why it was deleting this language from the Appellate Division opinion, stating:

> We take that action [vacating that portion of the Appellate Division opinion] because the Legislature has vested in the Chief Administrator of the Motor Vehicle Commission . . . the authority to determine the contents and procedure to be followed in respect of that standard statement. N.J.S.A. 39:4-50.2(e) (providing that the 'standard statement [that] shall be read by the police officer to the person under arrest' is to be prepared by the Chief Administrator of the Motor Vehicle Commission). Rather, in keeping with the express legislative allocation of responsibilities set forth in N.J.S.A. 39:4-50.2(e), we refer the procedure outlined by the Appellate Division to the Chief Administrator of the Motor Vehicle Commission for

notice of the requirement." Spell, 395 N.J. Super. at 348. Thus, the new requirement would not have benefited the defendant, and thus by definition was not necessary to the result in that case.

consideration. <u>See</u> <u>State v. Widmaier</u>, 157 N.J. 475, 498-99, 724 A. 2d 241 (1999) (recognizing that when 'it may be in the interest of both law enforcement officials and the driving public to amend the standard statement in order to eliminate any ambiguity concerning a motorist's intent to submit to the test[,]' judiciary may 'recommend a modification to the instructions accompanying the statement[;]' it may 'urge [that Chief Administrator of the Motor Vehicle Commission] consider revising the standard statement' as recommended; and it may 'encourage [that Chief Administrator] simplify and clarify' statement). And, because the decision to amend the standard statement is vested in the sound discretion of the Chief Administrator, we do not retain jurisdiction over that aspect of this judgment.

[<u>Id.</u> at 540.]

So far as we are aware, the Attorney General[8] has not amended the standard statement to require that the last paragraph be read in all cases. That being so, and for the reasons stated by the Supreme Court in <u>Spell</u>, it is not our place to impose such a requirement, either prospectively or retroactively.

In sum, the law remains unchanged that the last portion of the standard statement is required to be read only when the arrested person has given an ambiguous or conditional response. In this instance, both the municipal court

---

[8] Effective August 3, 2009, the responsibility for the promulgation of standard statements regarding implied consent to chemical breath test statutes was transferred from the Chief Administrator of the Motor Vehicle Commission to the Attorney General. 41 N.J.R. 2825(a).

judge and Law Division judge found that defendant gave an unequivocal "no" when asked whether she would provide a breath sample. There is no basis to disturb that factual finding, which is amply supported by the record, and thus no basis to disturb the fact-sensitive legal conclusion that the officer was not required in these circumstances to read the last portion of the standard statement.

Affirmed. The stay of execution of the sentence is vacated effective twenty days after the issuance of this opinion, and defendant shall have twenty days from the issuance of this opinion to surrender her driver's license to the municipal court.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION