**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2904-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

PAULINA M. BARTOLEWSKA,

    Defendant-Appellant.

_____

Submitted September 24, 2024 – Decided October 18, 2024

Before Judges Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Municipal Appeal No. 5-A-2022.

Levow DWI Law, P.C., attorneys for appellant (Evan M. Levow, of counsel and on the brief; Keith G. Napolitano Jr., on the brief).

Renée M. Robeson, Hunterdon County Prosecutor, attorney for respondent (Joseph Paravecchia, First Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a trial de novo, defendant Paulina M. Bartolewska appeals from the April 14, 2023 Law Division order finding her guilty of driving while intoxicated (DWI), N.J.S.A. 39:4-50. After reviewing the record in light of the governing legal principles, we affirm substantially for the reasons stated in Judge Angela Borkowski's cogent and thorough opinion.

I.

We derive the following facts from the record. On April 29, 2021, Bartolewska parked her vehicle on a highway shoulder in Readington Township. At almost midnight, while on patrol, Readington Township Police Officer David Bodine observed Bartolewska's stationary truck. He "pulled . . . alongside" her vehicle to check on the driver and make sure the vehicle was not "broken down." Upon speaking with Bartolewska, he immediately noticed her slurred speech. Suspecting Bartolewska may be intoxicated, Bodine requested she drive into a nearby parking lot. Prior to entering the lot, Bartolewska "revv[ed] [her] engine" multiple times stepping on the gas before her vehicle was in drive.

After approaching her truck, Bodine requested Bartolewska's documentation several times. He inquired if she had consumed alcohol, and she admitted to consuming champagne and "partying" at a wedding in the vicinity. When explaining what she imbibed, Bartolewska relayed she consumed

champagne and wine but then contradicted her statement stating she only had champagne. Thereafter, Bodine requested Bartolewska to exit the vehicle so he could observe her eyes. After smelling an odor of alcohol, Bodine asked Bartolewska to perform three standard field sobriety tests. Bartolewska failed to properly perform: the horizontal gaze nystagmus (HGN), the walk-and-turn, and the one-leg stand. Bodine also observed she had bloodshot and watery eyes.

Based on his observations, Bodine determined Bartolewska was operating her vehicle while intoxicated and placed her under arrest. She was ultimately charged with DWI, and refusal to submit to a breathalyzer test, N.J.S.A. 39:4-50.2.

On July 28, 2022, the municipal judge conducted a trial. Prior to trial, the judge dismissed Bartolewska's charge for refusing to submit to a breathalyzer test because the State failed to produce the stationhouse video recording. Finding Bodine's testimony credible, the judge convicted Bartolewska of DWI. She subsequently appealed to the Law Division.

After a de novo review, Judge Borkowski issued a comprehensive seventeen-page decision. She discerned Bodine's testimony was credible and made extensive findings of fact and conclusions of law. Further, the judge found

Bartolewska guilty of DWI and ordered the same sentence imposed by the municipal judge.

On appeal, Bartolewska raises the following points:

POINT I

OFFICER BODINE SEIZED . . . BARTOLEWSKA WITHOUT ANY REASONABLE [AND] ARTICULABLE SUSPICION THAT A VIOLATION HAD BEEN COMMITTED.

POINT II

OFFICER BODINE WAS NOT ACTING WITHIN THE SCOPE OF THE COMMUNITY CARETAKING DOCTRINE OR ANY OTHER EXCEPTION TO THE WARRANT REQUIREMENT.

POINT III

THE CONVICTION FOR DRIVING WHILE INTOXICATED CANNOT STAND UNDER THE WEIGHT OF THE EVIDENCE.

II.

A municipal court decision is appealed to the Law Division. See R. 3:23-1; R. 7:13-1. Appellate review of a municipal appeal "focuses on whether there is 'sufficient credible evidence . . . in the record' to support the [Law Division's] findings." State v. Robertson, 228 N.J. 138, 148 (2017) (first alteration in original) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). The Law Division

4

must decide the matter de novo on the record. State v. Monaco, 444 N.J. Super. 539, 549 (App. Div. 2016) (citing R. 3:23-8(a)(2)). The court is "obliged to make independent findings of fact" rather than engage in a review of the substantial credible evidence. State v. Heine, 424 N.J. Super. 48, 58 (App. Div. 2012); see also Johnson, 42 N.J. at 157.

In making findings about a witness's credibility, "the Law Division judge must give 'due, although not necessarily controlling, regard to the opportunity of the [municipal] judge'" to make credibility determinations. State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011) (quoting Johnson, 42 N.J. at 157). Where both the municipal judge and the Law Division judge have found a witness credible, we owe particularly strong deference to the Law Division judge's credibility findings. See Robertson, 228 N.J. at 147-48. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Locurto, 157 N.J. 463, 474 (1999). Accordingly, our review of the factual and credibility findings of the municipal courts and Law Division judges "is exceedingly narrow." State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470). "In

contrast . . ., we review a trial court's legal conclusions de novo." State v. Courtney, 478 N.J. Super. 81, 91 (App. Div. 2024).

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164 (2023) (quoting State v. Nyema, 249 N.J. 509, 527 (2022)). "Warrantless seizures and searches are presumptively invalid as contrary to the United States and the New Jersey Constitutions." State v. Pineiro, 181 N.J. 13, 19 (2004). To overcome the presumption of an unreasonable search and seizure, the State must demonstrate by a "preponderance of the evidence that an exception to the warrant requirement applies." State v. Manning, 240 N.J. 308, 329 (2020).

The community caretaking doctrine is a recognized exception to the Fourth Amendment warrant requirement and "applies when the police are engaged in functions, [which are] totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a . . . statute." State v. Diloreto, 180 N.J. 264, 275 (2004) (alteration in original) (quoting State v. Cassidy, 179 N.J. 150, 161 n.4 (2004)). The "doctrine recognizes that police officers provide a wide range of social services outside of their traditional law

6

enforcement and criminal investigatory roles." State v. Edmonds, 211 N.J. 117, 141 (2012) (quoting State v. Bogan, 200 N.J. 61, 73 (2009)). The doctrine provides an independent justification for intrusions into a citizen's liberty that would otherwise require a showing of probable cause or reasonable and articulable suspicion of criminal behavior. See Diloreto, 180 N.J. at 276.

A review of the doctrine's application entails a fact-sensitive inquiry. See State v. Scriven, 226 N.J. 20, 39 (2016). The State bears the burden of showing that the officer "act[ed] in an objectively reasonable manner, . . . check[ing] on the welfare or safety of a citizen who appears in need of help on [a] roadway without securing a warrant or offending the Constitution." Id. at 38. That concern must serve as a distinct motivation for the officer's conduct, divorced from any desire to further a criminal investigation. See Bogan, 200 N.J. at 77. Further, the inquiry must be reasonable in scope. See State v. Dickey, 152 N.J. 468, 476 (1998). Indeed, an officer's "community caretaking inquiry must not be 'overbearing or harassing in nature.'" State v. Drummond, 305 N.J. Super. 84, 89 (App. Div. 1997) (quoting State v. Davis, 104 N.J. 490, 503 (1986)).

Our Supreme Court has defined a field inquiry as "the least intrusive" form of police encounter, occurring when "a police officer approaches a person and asks 'if [the person] is willing to answer some questions.'" Pineiro, 181 N.J. at

20 (alteration in original) (quoting State v. Nishina, 175 N.J. 502, 510 (2003)). "A field inquiry is permissible so long as the questions '[are] not harassing, overbearing, or accusatory in nature.'" Ibid. (alteration in original) (quoting Nishina, 175 N.J. at 510). During such an inquiry, "the individual approached 'need not answer any question put to him [or her]; indeed, he [or she] may decline to listen to the questions at all and may go on his [or her] way.'" State v. Privott, 203 N.J. 16, 24 (2010) (quoting State v. Maryland, 167 N.J. 471, 483 (2001)). Unlike a field inquiry, an investigatory stop, also known as a Terry[1] stop, is characterized by a detention in which the person approached by a police officer would not reasonably feel free to leave, even though the encounter falls short of a formal arrest. See State v. Stovall, 170 N.J. 346, 355-57 (2002); see also Terry, 392 U.S. at 19. Reasonable suspicion "requires 'some minimal level of objective justification for making the stop.'" State v. Amelio, 197 N.J. 207, 211-12 (2008) (quoting Nishina, 175 N.J. at 511).

### III.

We first address together Bartolewska's contentions that Bodine did not act within the community caretaking doctrine exception and her vehicle was stopped without a reasonable and articulable suspicion. Arguing reversal is

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

warranted, Bartolewska specifically avers Bodine "conducted an investigative detention without [a] reasonable [and] articulable suspicion upon pulling up alongside . . . Bartolewska's truck because she did not feel free to leave."

We first note the municipal judge, and the Law Division judge found Bodine's testimony credible. Bodine relayed Bartolewska's vehicle was "parked on the shoulder" at almost midnight, and when he spoke with her through his police vehicle's passenger side window, he immediately noticed her slurred speech. Bodine did not activate his lights before stopping to perform a welfare check on Bartolewska. He testified his initial inquiry was "to stop to make sure she was okay" and "not broken down or anything." The record substantially supports the Law Division judge's finding that Bodine "reacted to an objectively reasonable community concern."

We next consider Bodine's actions in requesting Bartolewska to pull into the parking lot, produce her credentials, and thereafter exit the vehicle. The community-caretaking concern transitioned into a reasonable and articulable suspicion Bartolewska may be driving while intoxicated. In addressing whether Bodine had a reasonable and articulable suspicion to further investigate Bartolewska and detain her, Judge Borkowski noted that Bartolewska slurred her words during his inquiry. "Law enforcement officers 'may stop motor

 A-2904-22

vehicles where they have a reasonable [and] articulable suspicion that a motor vehicle violation has occurred.'"  State v. Barrow, 408 N.J. Super. 509, 517 (App. Div. 2009) (quoting State v. Murphy, 238 N.J. Super. 546, 553 (App. Div. 1990)).  "To establish reasonable suspicion, 'the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the suspicion."  State v. Pitcher, 379 N.J. Super. 308, 315 (App. Div. 2005) (quoting Pineiro, 181 N.J. at 21).

After Bodine requested she pull into a parking lot, Bartolewska "was unable to put her vehicle in drive and . . . revv[ed] the engine before she entered the parking lot."  Judge Borkowski noted Bodine asked for Bartolewska's documentation three times and she admitted to having recently consumed alcohol, which prompted him to investigate further.  The judge specifically found Bodine's credible testimony supported "the [initial] interaction eventually escalated into an investigative detention."  Thus, Bodine's legitimate community-caretaking inquiry transformed into a lawful investigatory motor vehicle stop, as he had a reasonable and articulable suspicion to believe Bartolewska was operating the truck while intoxicated.  Therefore, we discern no reason to disturb the judge's well-reasoned finding, which is supported by

sufficient credible evidence, that Bodine had a reasonable and articulable suspicion to stop and detain Bartolewska.

We likewise reject Bartolewska's argument that there is insufficient evidence to sustain a finding of guilt beyond a reasonable doubt for driving while intoxicated. A person is guilty of DWI if he or she "operates a motor vehicle while under the influence of intoxicating liquor . . . or operates a motor vehicle with a blood alcohol concentration of 0.08 percent or more by weight of alcohol in the defendant's blood." N.J.S.A. 39:4-50(a). "Under the influence" of alcohol means a driver's "physical coordination or mental faculties are deleteriously affected." State v. Nunnally, 420 N.J. Super. 58, 67 (App. Div. 2011) (first quoting N.J.S.A. 39:4-50; and then quoting State v. Emery, 27 N.J. 348, 355 (1958)). "In a case involving intoxicating liquor, 'under the influence' means a condition which so affects the judgment or control of a motor vehicle operator 'as to make it improper for him [or her] to drive on the highway.'" State v. Cryan, 363 N.J. Super. 442, 455 (App. Div. 2003) (quoting Johnson, 42 N.J. at 165); see also State v. Kent, 391 N.J. Super. 352, 356-57, 363, 383-84 (App. Div. 2007) (sustaining a DWI conviction where defendant caused a single-car accident on a dry road without precipitation; the officer observed defendant's

watery and bloodshot eyes, slurred speech, slow walking, disheveled appearance; and defendant admitted to consuming alcohol).

Bodine observed Bartolewska had:  slurred speech, bloodshot and watery eyes, an odor of alcohol, and chewed on "a mint" that he asked her to "please" "spit out."  Further, after admitting she consumed alcohol, Bartolewska provided inconsistent answers as to what she had imbibed, and Bodine had to request her "documentation three separate times."  Bodine then requested Bartolewska to perform the HGN, walk-and-turn, and one-leg stand field sobriety tests, which she failed to properly perform.  Proof of intoxication can be based on a police officer's observations.  See State v. Slinger, 281 N.J. Super. 538, 543 (App. Div. 1995).  A defendant's demeanor, physical appearance, slurred speech, and bloodshot eyes, together with an odor of alcohol, are sufficient to sustain a DUI conviction.  See State v. Bealor, 187 N.J. 574, 588-89 (2006).  "Considering the totality of circumstances," Judge Borkowski found Bartolewska's "physical coordination and mental fac[ulties] were impaired by alcohol beyond a reasonable doubt."  We conclude there is sufficient credible evidence in the record to support the judge's factual findings and Bartolewska's DUI conviction.

To the extent not addressed, Bartolewska's remaining contentions lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

12

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-2904-22